SUMMA HEALTH SYSTEM, Appellant and Cross–Appellee,

v.

VININGRE, Appellee and Cross–Appellant.

[Cite as *Summa Health Sys. v. Viningre* (2000), 140 Ohio App.3d 780.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19594.

Decided Dec. 27, 2000.

784

*Scott Salsbury,* for appellant and cross–appellee.

*Laura K. McDowall,* for appellee and cross–appellant.

BAIRD, Judge.

Summa Health System appeals from judgment following a jury trial in the Summit County Court of Common Pleas, which found in favor of defendant Nancy Viningre on Summa's action on account and which awarded damages to Nancy Viningre on her counterclaim of fraud against Summa. Nancy cross-appeals the directed verdict for Summa on Nancy's counterclaim under Ohio's Consumer Sales Practices Act. This court affirms in part and reverses in part.

## I

On March 3, 1993, twenty-four-year-old Nancy Viningre had a Pap test performed by Dr. Groesel, a resident intern at the women's clinic at Akron City Hospital, a facility operated by Summa Health System. Nancy was told that the result was normal. However, in September 1993, the clinic realized that the Pap actually showed unusual cells that required careful monitoring. The clinic advised Nancy of the situation and Nancy had ongoing diagnostic tests. Nancy was employed but had no health insurance and Summa agreed to pay for all the costs of the diagnostic testing. In January 1994, Karan Tassone from the risk management department at Summa contacted Nancy regarding the ongoing testing. Tassone assured Nancy that Summa would cover the cost of her care because it was clear that Summa was negligent in not discovering the unusual Pap results earlier.

By February 1994, it was determined that Nancy should have a total hysterectomy. Dr. Eric Jenison performed the hysterectomy at Akron City Hospital on March 17, 1994. Nancy alleges that she had the surgery at City Hospital because Tassone had told Nancy that Summa would pay for the procedure if it was performed at their facility. Trial evidence included Summa billing department notes memorializing a conversation with the risk management department in late March 1994 and stating that risk management was going to "write off" Nancy's hospital bill.

During the spring of 1994, before and after the surgery, Tassone and Nancy had regular communication regarding Summa's negligence and Nancy's medical condition. In February 1994, Nancy told Tassone that she was advised that she should sue the hospital for malpractice, but she did not want to do so. Tassone suggested that Summa and Nancy could negotiate a settlement. On April 29, 1994, Tassone sent a letter to Nancy stating that Dr. Jenison believed that Summa's failure to timely detect the irregular cells in the Pap test did not affect Nancy's outcome.

On May 24, 1994, Tassone suggested that although Summa was not liable for Nancy's condition, Summa would pay Nancy $20,000 to settle any malpractice claim. Tassone stated that Nancy would be responsible for paying the $13,000 hospital bill and her doctor bills totaling approximately $5,000. Nancy initially rejected the claim, but said she would think about it. On June 7, 1994, Tassone and Nancy spoke by phone about a possible settlement, and Nancy agreed to settle for $20,000 with the alleged agreement that Summa would write off the hospital bills. On July 24, 1994, Nancy signed a document releasing any claims against Summa in exchange for $20,000. The release contained no mention of the issue of the medical bills. During the entire time of the negotiations, Nancy was not represented by counsel.

In November 1994, Nancy received a letter from a collection attorney representing Summa, stating that Nancy owed Summa $13,176.59. At this time Nancy was employed by a credit counseling agency and her supervisor advised Nancy that if she failed to respond to the letter Summa would likely sue her for the money. Nancy made one $50 payment but she soon challenged the bill on the basis that the issue was resolved by the settlement agreement. When Nancy failed to pay, Summa filed this action on the account. Nancy counterclaimed against Summa for fraud and for violating the Consumer Sales Practices Act ("CSPA").

The case proceeded to a jury trial. The court granted Summa's motion for a directed verdict on the CSPA claim. Summa's account action and the fraud counterclaim were submitted to the jury. The jury found for Nancy on Summa's action on account. The jury also found in favor of Nancy on her fraud claim and awarded her $10,000 in compensatory damages, $30,000 in punitive damages, and reasonable attorney fees as damages on the fraud claim. Summa filed a motion for judgment notwithstanding the verdict ("J.N.O.V."), arguing that the trial court erroneously admitted parol evidence, that Nancy failed to tender the $20,000 consideration for the release, and that there was no verdict for punitive damages. The court overruled Summa's J.N.O.V. motion.

The trial court later determined that Nancy was entitled to reasonable attorney fees of $40,000 and entered judgment accordingly. Summa filed the instant

appeal, assigning ten errors. Nancy cross-appealed summary judgment on the CSPA claim. We address Summa's assigned errors first.

## II

SUMMA'S ASSIGNMENTS OF ERROR 1–4:

"1. The trial court erred in entering judgment in favor of appellee's fraud claim because it is barred by the release knowingly and voluntarily executed by appellee in favor of appellant.

"2. The trial court erred in permitting appellee to testify to oral representations, allegedly made by appellant before appellee executed her release, that contradict the release's terms.

"3. The trial court erred in entering judgment in appellee's fraud claim because she did not return or tender to appellant the consideration supporting her release.

"4. The trial court erred in entering judgment in favor of appellee's fraud claim because there is no evidence of justifiable reliance."

It is undisputed that Nancy agreed not to sue Summa for medical malpractice in exchange for certain consideration. It is also undisputed that Nancy has never sued Summa for medical malpractice.

■ Summa's first and second assignments of error challenge the trial court's admission of parol evidence to show fraudulent inducement to settle. Nancy claims that she was advised that she would not have to pay any hospital bills related to the March 17, 1994 surgery or any of the diagnostic testing required by Summa's failure to properly read the original Pap test. Thus, Nancy maintains that when she signed the release in exchange for $20,000, she did so understanding that she owed Summa no money for the hospital bills relating to the surgery. Nancy claims that pursuant to the release, she was entitled to keep the $20,000 free and clear. Nancy testified that prior to entering into negotiations with Summa, and indeed prior to her surgery, Summa had already advised her that Summa would write off the hospital costs related to the surgery if the surgery was done at Akron City Hospital. Nancy testified that after the problems with the Pap test, she preferred to have the surgery performed at another hospital. However, because she had no medical insurance, she agreed to have the procedure done at Akron City Hospital. Thus, by way of the prior unwritten agreement between Nancy and Tassone, Nancy allegedly was not financially obligated to Summa. It was on this basis that Nancy agreed to sign the settlement.

Summa argues to the contrary that the release makes no mention of the hospital bills and that the release clearly states that no representations were made to Nancy other than those recited in the release. Summa argues that the release was an unambiguous and fully integrated document, which "expresses no intent for [Summa] to provide [Nancy] with any consideration other than the $20,000.00 specified in the Release." Thus, Summa argues that the trial court erred in permitting Nancy to present parol evidence contradicting the terms of the release.

Parol evidence is generally not permitted to contradict the terms of a fully integrated and unambiguous written instrument dealing with "precisely the same subject matter as the * * * written agreemen[t]." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 441, 662 N.E.2d 1074, 1081, citing *Dice v. Akron, Canton & Youngstown RR. Co.* (1951), 155 Ohio St. 185, 191, 44 O.O. 162, 164–165, 98 N.E.2d 301, 304 ("A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed").

However, it is well established that parol evidence is admissible to prove fraudulent inducement. *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 28, 734 N.E.2d 782, 789–790, citing *Drew v. Christopher Constr. Co., Inc.* (1942), 140 Ohio St. 1, 23 O.O. 185, 41 N.E.2d 1018, paragraph two of the syllabus. Here, the parol evidence was introduced to show that Summa induced Nancy to sign the release with the full assurance by Summa that the hospital bills had been written off.

Furthermore, Summa drafted the release which states, "[I]t is agreed that the settlement of the above-referenced claim, and the releases by all parties of real or potential claims relative thereto, shall in no way be construed as implication or admission of liability with respect to any party to this Release." A reasonable person could conclude from the terms of the release that Summa was releasing its "real or potential claims relative" to Nancy's misdiagnosis, including the hospital bills related to the surgery.

The release does not clearly discuss the issue of who would be responsible for Nancy's hospital bills for the surgery, and the above-quoted phrase creates at minimum an ambiguity about whether Summa would release its "real or potential claims" against Nancy pursuant to the settlement. This court concludes that the trial court did not err in permitting parol evidence both to establish fraud and to assist in settling an ambiguity.

Summa's first and second assignments of error are overruled.

Summa's fourth assignment of error claims that there was no evidence that Nancy reasonably relied on the promise of release of her medical bills. Reasonable reliance on material misrepresentations is an element of a claim for fraud. See *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus. Summa argues that if Nancy relied on any promises by Summa to pay her hospital bill, such reliance was unreasonable, since the release itself did not make such a representation. However, the release itself at least suggests that all parties would release all claims. Thus, Nancy reasonably relied on Summa's representations that the hospital bills would be paid when she signed the release. Summa also argues that there was no properly admitted evidence to support reasonable reliance. However, the properly admitted parol evidence showed that Tassone represented to Nancy and to Summa's billing staff in February and March 1994 that Summa would waive the bills.

Summa's fourth assignment of error is overruled.

Summa's third assignment of error states that in order to prevail on her fraud claim, Nancy was required to tender the $20,000 settlement amount. Summa cites cases where the party releasing a tort claim later desires to pursue the claim despite the release. In such cases, courts have held that the party must at minimum return the consideration paid in exchange for the release. See, *e.g., Shallenberger v. Motorists Mut. Ins. Co.* (1958), 167 Ohio St. 494, 5 O.O.2d 173, 150 N.E.2d 295, paragraph two of the syllabus. However, Summa's reliance on such cases is misplaced. Nancy is not seeking to vacate the release so she can sue Summa for malpractice. Rather, she has sued for fraud. Nancy could have sued Summa for malpractice, but she testified that she did not want her illness and her inability to have children discussed in the course of ongoing litigation. With this in mind, Nancy agreed to release Summa in exchange for $20,000 and Summa's release of all claims against her. However, after negotiating the release, Summa sued Nancy for payment of the hospital bills.

Nancy claims that she has suffered both emotional trauma because of the trial and the embarrassment of discussing her medical condition to potential creditors who question her credit status because of Summa's action on the account. Nancy also has had to hire legal counsel to defend on the account action. All of these damages exceed the $20,000 consideration that Summa paid to Nancy. Nancy was not obligated to return the consideration because she did not seek to void the release. Rather, she sues for damages that resulted from Summa's failure to honor the settlement. Summa's third assignment of error is overruled.

## III

## SUMMA'S ASSIGNMENTS OF ERROR 5-6:

"5. The trial court erred in awarding punitive damages because the jury did not return a verdict awarding punitive damages.

"6. The trial court erred in awarding punitive damages because there is no evidence justifying such an award."

■ Summa's fifth assignment of error claims that Nancy is limited to the general jury verdict, which awarded Nancy $10,000 on her fraud claim, rather than the trial court's judgment entry, which incorporated the jury's answers to interrogatories Nos. 4, 5, and 6, finding Summa liable for punitive damages of $30,000 and attorney fees. Summa says that the general jury verdict must prevail over the inconsistent interrogatories, and that because Nancy did not object to the inconsistencies, she has waived the issue and is bound by the general verdict. Nancy responds that the judge read both the general verdict and the interrogatories in the presence of the jury and the parties, and interpreted the jury's verdict to mean that Nancy was entitled to $10,000 in compensatory damages, $30,000 in punitive damages, and attorney fees for punitive damages. Nancy asserts that the jury did not correct the trial court's interpretation, and that Summa did not object to the trial court's recitation of the more generous jury verdict.

■ The burden of demonstrating error is on the party asserting it. App.R. 16(A). It is axiomatic that when a party fails to bring to the trial court's attention an error at a time when the error could be corrected, such error is waived on appeal. See *State v. Carter* (2000), 89 Ohio St.3d 593, 598, 734 N.E.2d 345, 351, citing *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367–1368. Because Summa did not object to the trial court's alleged misinterpretation of the jury's verdict at a time when the jury could have been polled as to the apparent inconsistency between the general verdict and the interrogatories, Summa has waived this issue for appeal. It is the trial court's duty to harmonize inconsistencies between the verdict and interrogatories if possible. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 10, 536 N.E.2d 411, 415–416, citing *Klever v. Reid Bros. Express, Inc.* (1949), 151 Ohio St. 467, 39 O.O. 280, 86 N.E.2d 608, paragraph one of the syllabus and 151 Ohio St. at 476, 39 O.O. at 284, 86 N.E.2d at 612–612. It is the duty of the party dissatisfied with the trial court's resolution of inconsistencies to register an objection at a time when the jury is still present to assist in determining its true intent. *Id.* Summa's fifth assignment of error is overruled.

■ Summa also claims that there was no evidentiary basis to support an award of punitive damages. The Ohio Supreme Court has held that to recover punitive damages, a plaintiff must show "a positive element of conscious wrongdoing." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, 1175–

1176. This means that the plaintiff must show that the defendant possessed "knowledge of the harm that might be caused by his behavior." *Id.* "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* at the syllabus.

Nancy presented evidence that Summa had already advised her that her medical bills would be written off by Summa and that if she signed the release, she would receive $20,000 free and clear. Nancy also submitted evidence that Tassone altered her notes memorializing conversations with Nancy in order to support Summa's position that Nancy was responsible for the hospital bills. This court cannot conclude that the jury created a manifest miscarriage of justice in determining that Summa's actions exhibited a conscious disregard for Nancy's rights in encouraging her to settle with Summa and then suing her for non-payment of a bill that Summa said it had written off.

 Summa also claims that there was no actual damages proved and therefore that Nancy was not entitled to punitive damages. However, Nancy presented considerable evidence of her ongoing embarrassment due to her need to explain to potential employers and creditors the reason for a cloud on her credit history. The jury believed that she suffered personal humiliation of the sort she sought to avoid by agreeing to settle with Summa. The jury appropriately determined that Nancy's actual damages amounted to $10,000. See *Starinki v. Pace* (1987), 41 Ohio App.3d 200, 535 N.E.2d 328.

Summa's sixth assignment of error is overruled.

## IV

### SUMMA'S ASSIGNMENTS OF ERROR 7–8:

"7. The trial court erred in permitting appellee to offer opinion testimony at trial as to the reasonableness of her attorney fees.

"8. The trial court erred in subsequently awarding significant attorney fees to appellee."

Summa's seventh assignment of error states that the trial court erred in permitting an attorney to offer expert testimony at trial about reasonable attorney fees. This error is moot, in that the jury was instructed that if it determined Nancy was entitled to attorney fees, the trial court would determine the amount of attorney fees to award. The trial court held a separate evidentiary hearing after the jury trial on the amount of attorney fees. Summa's seventh assignment of error is overruled.

Summa also challenges the weight of the evidence supporting the award of reasonable attorney fees. Summa claims that the evidence produced by Nancy was insufficient to justify the $40,000 in attorney fees the trial court awarded.

The Ohio Supreme Court has outlined the following factors for determining reasonable attorney fees:

" ' "(1) the time and labor involved in maintaining * * * [the] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of * * * [the] litigation. * * *" ' Additional factors to consider are '[t]he fee customarily charged in the locality for similar legal services' and '[t]he amount involved and the results obtained.' DR 2–106(B), Code of Professional Responsibility. Also, there must be evidence presented at trial concerning the proper measure of attorney fees in order to allow an award." *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 41, 543 N.E.2d 464, 470.

Nancy's attorney testified before the judge and presented as evidence of the work performed a summary of the billable hours applicable to the prosecution of the fraud claim and the defense of the collection case. In addition, her attorney testified about the time spent responding to post-trial motions filed by Summa. Nancy's counsel testified that she expended one hundred ninety-two hours on the fraud claim and in defense of the collection case. Counsel also testified that Nancy's case required expending $2,700 for deposition transcripts. Nancy presented expert testimony by a local attorney in the practice of civil litigation with thirty-three years of private practice experience. This witness testified that $200 per hour was a reasonable fee for Nancy's counsel and that the hours listed were reasonable for the complexity of this case. Thus, in the opinion of this expert witness, reasonable attorney fees would be $38,400, with additional costs of $2,700 for a total of $41,100.

Summa presented as an expert witness an attorney with twenty-five years of practice, most of which is in the area of criminal defense. Summa's expert did not appear to be aware of the original collection amount, and opined that reasonable fees should be no more than the amount of Summa's collection claim, $13,000. He stated, "This was a simple case on account. That is basically a one-witness case." He also stated that the case was the proverbial mountain made out of a molehill by counsel. However, the evidence presented by Nancy's expert witness, who did the more thorough review of the file, established that Summa's counsel was responsible for a considerable portion of the motions filed.

When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the

criminal context. *Frederick v. Born* (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14, 1996 WL 471219. In determining whether a judgment is against the manifest weight of the evidence:

" 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720–721; see, also, *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

Accordingly, before an appellate court will reverse a judgment, the court must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.

This court cannot conclude that the trial court created a manifest miscarriage of justice in determining that $40,000 was a reasonable amount to award for attorney fees in the instant case. Summa's eighth assignment of error is overruled.

## V

### SUMMA'S ASSIGNMENT OF ERROR 9:

"9. The trial court erred by not amending its May 5, 1998 judgment."

Summa's ninth assignment of error asserts that post-judgment interest begins to accrue on the date of a final judgment. However, in the instant case this court dismissed Summa's initial appeal from the trial court's judgment dated May 5, 1998, because the judgment was not final and appealable. The appeal was dismissed because the trial court had not yet dealt with the issue of attorney fees, there was a claim outstanding, and the trial court had not determined, pursuant to Civ.R. 54(B), that there was no just cause to delay an appellate review of the judgment.

R.C. 1343.03 governs the award of post-judgment interest. The statute provides, "interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct * * * shall be computed from the date the judgment, decree, or order is rendered." R.C. 1343.03(B). The statute does not require that the judgment be final and appealable. Summa

argues that because the May 5, 1998 judgment was not appealable, that the judgment cannot serve as the accrual date for post-judgment interest. However, Summa offers no authority for this proposition, nor has this court found such authority.

The fact that the May 5, 1998 judgment did not so totally determine the rights and responsibilities of all the parties and did not so totally resolve all of the claims as to permit appropriate appellate review is not germane to the issue of when post-judgment interest begins to accrue. Summa's ninth assignment of error is overruled.

## VI

SUMMA'S ASSIGNMENT OF ERROR 10:

"10. The trial court erred in entering judgment against appellant's action on account."

Summa's tenth assignment of error challenges the weight of the evidence on its action on account. Because "an action on an account is founded upon contract, express or implied, any competent evidence is necessarily admissible to prove the existence of the contract, its consideration, the furnishing of the services or goods, the consideration therefor, any payments made, and the balance due." *Am. Sec. Serv. v. Baumann* (1972), 32 Ohio App.2d 237, 243–244, 61 O.O.2d 256, 259–260, 289 N.E.2d 373, 378.

At trial, Summa asserted that it had a valid account balance against Nancy in the amount of $13,176.59 for the hospital bills related to her hysterectomy on March 17, 1994. Nancy disputed the bill because she claimed that Tassone of Summa told her that Summa would write off the hospital bill if the surgery was performed at Akron City Hospital. An internal note from Summa's billing department memorialized a conversation with Tassone's secretary, in which the secretary after consulting with Tassone advised the billing department that the risk management department was going to write off Nancy's hospital bill. Tassone, to the contrary, testified at trial that there was no such agreement between Summa and Nancy prior to or after the surgery. Nancy's testimony and the billing department note supported the conclusion that there was no implied contract that Nancy would pay for the services Summa provided. Tassone's testimony supports the conclusion that there was no deal between Summa and Nancy and that therefore there was an implied contract between Nancy and Summa that Nancy would pay for Summa's services. The jury clearly believed Nancy and Summa's internal note, which is a party's statement against interest. This court cannot conclude that the jury clearly lost its way in rendering a verdict in Nancy's favor on the action on account.

Summa's tenth assignment of error is overruled.

## VII

NANCY'S ASSIGNMENT OF ERROR:

"The trial court erred in granting Summa's motion for directed verdict on Nancy's Consumer Sales Practices claim."

The trial court directed a verdict in favor of Summa on Nancy's CSPA because the court determined that the transaction at bar was not a "consumer transaction" as defined by the CSPA, R.C. 1345.01 *et seq.* The proper standard of review on a directed verdict is a *de novo* review. *Abbott v. Jarrett Reclamation Serv., Inc.* (1999), 132 Ohio App.3d 729, 738, 726 N.E.2d 511, 517–518. This court views the evidence most favorable to the nonmoving party and determines whether reasonable minds could only find against the nonmoving party. *Id.*

R.C. 1345.01(A) defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. 'Consumer transaction' does not include transactions between [public utilities and financial institutions] and their customers; transactions between certified public accountants or public accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients; and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services."

The statute further defines "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer." R.C. 1345.01(C).

Nancy claims that the transaction between Summa and herself, to provide Nancy with hospital services for her hysterectomy without charge due to the hospital's negligent failure to diagnose, does not fall under any of the transactions excepted from the CSPA. We agree. While transactions with physicians are exempted from the CSPA, a transaction between a service provider such as a hospital and the consumer is not clearly exempted. See *Elder v. Fischer* (1998), 129 Ohio App.3d 209, 717 N.E.2d 730, and *Thorton v. Meredia Suburban Hosp.* (Nov. 21, 1991), Cuyahoga App. No. 59405, unreported, 1991 WL 244206.

Nancy contends that Summa engaged in a deceptive manner in a consumer transaction by making representations about the hospital services it was offering Nancy prior to her surgery and then materially altering those representations after the surgery was performed. This court cannot conclude that reasonable minds could only find against Nancy on her claim under the CSPA.

Nancy's assignment of error is well taken, and the judgment of the trial court directing a verdict against Nancy on the CSPA claim is reversed.

## VIII

We have overruled Summa's assignments of error. We have sustained Nancy's assignment of error regarding the trial court's directed verdict on the CSPA claim. We affirm the judgment of the trial court in part, reverse the judgment on the CSPA claim, and remand the cause for further determination on the CSPA claim consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BATCHELDER, P.J., and WHITMORE, J., concur.