OPINION
{¶ 1} Defendants-appellants, Blushing Brides, LLC, and Louis R. Zacks, appeal from the Franklin County Municipal Court's judgment whereby the trial court ordered appellants to pay plaintiff-appellee, The Gray Printing Company, damages in appellee's claim for money owed on a printing services account.
 {¶ 2} On March 26, 2003, appellee filed a complaint against Blushing Brides, LLC and Louis and Arnold Zacks, alleging that they:
* * * [A]re indebted to [appellee] on an account for goods and services in the sum of $7,532.66 together with accrued interest in the amount of $790.93 through January 9, 2003, plus interest thereafter on the principal balance at the rate of 6.00% per annum. * * *
Appellee attached to the complaint a document that referenced Blushing Brides, LLC and its address, and that denoted money paid and owed on the printing services account. In the course of events, appellee dismissed the case against Arnold Zacks due to Arnold Zacks' death during the suit.
 {¶ 3} Ultimately, the parties tried the case with the judge as trier of fact. During opening statements, appellee's counsel discussed appellants' liability to appellee and mentioned that a promissory note that Louis Zacks signed provided "evidence of Mr. Louis Zacks' individual liability" to appellee. (Tr. at 6.) However, in countering appellee's counsel's assertion on Louis Zacks' individual liability, appellants' counsel mentioned during opening statements that appellee's complaint "only asserts one cause of action, which is upon an account" and that "there was no cause of action upon" the promissory note. (Tr. at 7.)
 {¶ 4} At trial, Scott Gray, owner of The Gray Printing Company, testified on appellee's behalf. According to Scott Gray, Blushing Brides, LLC contacted appellee to establish a printing services account. Scott Gray identified at trial a July 17, 2000 credit agreement. The credit agreement named Blushing Brides, LLC as the "Purchaser" and Louis Zacks as senior manager. The agreement contained a clause that indicated "[t]he undersigned warrants on behalf of Purchaser that all information supplied by Purchaser herein is true." After the clause, Louis Zacks signed his name individually and on behalf of Blushing Brides, LLC. Next, the agreement stated that:
By executing this application on the reverse side hereof, Purchaser agrees as follows:
1. Payment Terms: All invoices submitted to Purchaser shall be paid by Purchaser in accordance with the terms thereof.
2. Finance Charges: All balances not paid by Purchaser in accordance with the terms of the Gray invoice shall be subject to a finance charge of 1.5% per month.
3. Default: In the event Purchaser fails, for a period of 30 days, to pay any invoice when due, Purchaser shall have committed an event of default hereunder.
 {¶ 5} Scott Gray stated at trial that Louis Zacks signed the credit agreement personally and as senior manager for Blushing Brides, LLC. In the course of events, according to Scott Gray, appellee began printing magazines for Blushing Brides, LLC.
 {¶ 6} Scott Gray further testified that Blushing Brides, LLC made payments, "but longer than a period of 30 days. In many cases, it took [appellee] six months to be paid in full for previous issues." (Tr. at 16.) Scott Gray then identified a May 28, 2002 invoice for Blushing Bride LLC's spring/summer 2002 magazine. The invoice, addressed to Blushing Brides, LLC, denoted that appellee printed 15,000 magazines and that Blushing Brides, LLC owed $15,032.66 on the printing services account. The invoice also indicated that there would be a 1.5 percent per month charge on unpaid balances that existed 30 days from the invoice. According to Scott Gray, the 30-day due date noted on appellee's invoices reminded customers of the terms and conditions that they agreed to on the credit application.
 {¶ 7} Next, Scott Gray stated that appellee shipped 10,000 spring/summer 2002 magazines to two different locations. Scott Gray also testified that, prior to appellee printing the spring/summer 2002 issue:
* * * We had not been paid in full * * * from the fall/winter of 2001 issue that we produced in October. Since we were not paid in full for that issue, prior to us putting ink on paper for this next issue, we demanded to be paid in full for the prior issues, as well as some sort of agreement above and beyond the regular application, some agreement, some promissory note that would guarantee we get paid for the work that we completed.
(Tr. at 16-17.)
 {¶ 8} Scott Gray then identified at trial a promissory note signed by Louis Zacks, individually, and by attorney Arnold Zacks. The promissory note was dated May 22, 2002, and contained a promise to pay appellee $14,778 within 30 days at an interest rate of six percent per annum. Scott Gray testified that the promissory note reflected the amount due on the May 28, 2002 invoice with the exception of some shipping costs referenced in the invoice.
 {¶ 9} Next, according to Scott Gray, appellee received two more payments in August and October of 2002, "for approximately half of what was due us." (Tr. at 20.) Scott Gray testified that, as a result of the outstanding balance, appellee ceased doing business with appellants.
 {¶ 10} Scott Gray also testified that appellee has 5,000 of the spring/summer 2002 magazines "awaiting a destination to be shipped to." (Tr. at 22.) Scott Gray confirmed that the magazines had no value to appellee and that there was no way for appellee to sell them.
 {¶ 11} On cross-examination, Scott Gray reiterated that, in regards to the spring/summer 2002 issue, appellee "needed to be paid in full for the previous issue, plus a certain amount up front, approximately $15,000 prior to [appellee] shipping the first portion" of the spring/summer 2002 issue. (Tr. at 28.) Scott Gray then indicated that the next payment would have been due in 30 days. Next, Scott Gray reiterated that appellee would have shipped more magazines after Blushing Brides, LLC made subsequent payments in August and October "if [appellee] would have received some sort of destination for those to ship to." (Tr. at 29.)
 {¶ 12} Louis Zacks testified to the following on appellants' behalf. Louis Zacks owns Blushing Brides, LLC, a publisher of wedding planning magazines. The magazines have a retail value of $4.50 per magazine. In May 2002, the parties agreed that Louis and Arnold Zacks would sign a promissory note to ensure appellee's continued service. Louis Zacks also testified that, after discussions with appellee in May 2002:
* * * The understanding was as we made continuing payments * * * that we would receive a commensurate number of magazines, every payment that we made * * *.
(Tr. at 48.)
 {¶ 13} Louis Zacks further testified to the following. Appellants made payments in August and October 2002, but appellee failed to ship any magazines after appellants made the payments. Louis Zacks requested the additional magazines with the payments, and Louis Zacks told appellee where the magazines were to be shipped.
 {¶ 14} On cross-examination, Louis Zacks stated that the parties agreed that appellee would print the entire order for the spring/summer 2002 issue. Louis Zacks also verified that he signed the July 2000 credit agreement twice, and Louis Zacks indicated that "[w]hen you sign something on behalf of an entity and also sign individually, you generally sign twice[.]" (Tr. at 66.)
 {¶ 15} During closing arguments, appellants' counsel reiterated that appellee's complaint "states only one cause of action, and that's for an account." (Tr. at 81.) Thus, in countering appellee's counsel's earlier argument that the May 22, 2002 promissory note evinces Louis Zacks' personal liability in appellee's action, appellants' counsel also argued that "there's been no attempt to amend the complaint to add any other causes of action pertaining to a promissory note[.]" (Tr. at 81-82.) As to Blushing Brides, LLC, appellants' counsel argued that the limited liability company is not liable to appellee because appellee first breached an agreement between the parties by not shipping magazines after Blushing Brides, LLC made payments in August and October 2002.
 {¶ 16} The trial court concluded that Blushing Brides, LLC is liable to appellee for damages and that Louis Zacks is personally liable for damages. In explaining its decision in court, the trial court mentioned that "the promissory note * * * makes [Louis Zacks] personally liable in this case." (Tr. at 87.)
 {¶ 17} Pursuant to appellants' request, the trial court also issued findings of fact and conclusions of law. In the findings of fact and conclusions of law, the trial court reiterated that:
1. Evidence adduced during the course of the trial * * * established that an agreement between [appellee] and [appellants] was entered into on or about July 17, 2000. As part of that agreement * * * [Louis Zacks] was a party to the contract as an individual. * * *
* * *
3. * * * [A]n invoice dated May 28, 2002, evidenced a balance due from [appellants] * * *.
* * *
6. [Appellee's] Complaint contends that the amount of $7,532.66 is the balance due * * *. The Court finds that the amount of $7,532.66 is the correct amount due from [Blushing Brides LLC]. * * *
7. [Louis Zacks] owes under the agreement the sum of $7,278.66 plus interest at 6.0% per annum from October 14, 2002. The amount due by Louis R. Zacks is calculated by subtracting from the $14,778.42 (which is the amount of the Promissory Note) two payments made after the Promissory Note totaling $7,500.00. The interest rate of 6.0% for Louis R. Zacks is derived from the Promissory Note which provides for interest at 6.0% per annum and modifies the agreement [in the July 2000 credit agreement that] Louis R. Zacks entered into of paying 1.5% per month * * *.
Lastly, the trial court reemphasized:
9. The initial [July 2000 credit agreement] constituted an agreement between [appellee] and Blushing Brides, LLC and Louis R. Zacks as an individual. Louis R. Zacks' individual liability was further confirmed as a result of the testimony and evidence pertaining to the promissory note which he signed as an individual. The Promissory Note reaffirmed his personal liability with regard to the amounts due under the agreement and modified only his obligation as to interest. * * *
 {¶ 18} In the judgment entry, the trial court stated:
* * * [T]he Court grants judgment in favor of [appellee] against [Blushing Brides, LLC], in the amount of $7,532.66 plus interest at the rate of 1.5% per annum from October 14, 2002. The Court further orders that [appellee] shall have a judgment against Louis R. Zacks individually in the amount of $7,278.42 plus interest at 6.0% per annum from October 14, 2002.
 {¶ 19} Appellants appeal, raising one assignment of error:
THE FRANKLIN COUNTY MUNICIPAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JUDGMENT IN FAVOR OF APPELLEE.
 {¶ 20} In their single assignment of error, appellants first argue that the trial court erroneously concluded that Louis Zacks is personally liable to appellee for damages in appellee's action. We agree.
 {¶ 21} Initially, we recognize that appellee filed a complaint on an account for printing services. An account is an "unsettled claim or demand by one person against another, based upon a transaction creating a debtor and creditor relation[ship] between the parties[.]" American Security Service v. Baumann
(1972), 32 Ohio App.2d 237, 242. "[T]he cause of action exists only as to the balance that may be due one of the parties as a result of the series of transactions." Id. Thus, "[a]n action on an account is appropriate where the parties have conducted a series of transactions for which a balance remains to be paid."Blanchester Lumber Supply, Inc. v. Coleman (1990),69 Ohio App.3d 263, 265, citing AMF, Inc. v. Mravec (1981),2 Ohio App.3d 29, 31. An action on an account is "founded upon contract" and constitutes a breach of contract claim. Oxford Sys.Integration, Inc. v. Smith-Boughan Mechanical Serv.,159 Ohio App.3d 533, 2005-Ohio-210, at ¶ 16; Blanchester Lumber Supply,Inc. at 265.
 {¶ 22} When appellee filed its complaint, appellee attached a document detailing the account, in accordance with Civ.R. 10(D). See Baumann at 239; Oxford Sys. Integration, Inc. at ¶ 13. The document referenced Blushing Brides, LLC and made no mention of Louis Zacks having personal liability on the account. As such, the document, by itself, failed to establish Louis Zacks' personal liability on the account.
 {¶ 23} Next, we recognize that Blushing Brides, LLC is a limited liability company, and Louis Zacks is a member and senior manager of the company. Pursuant to R.C. 1705.48(B):
Neither the members of the limited liability company nor any managers of the limited liability company are personally liable to satisfy any judgment, decree, or order of a court for, or are personally liable to satisfy in any other manner, a debt, obligation, or liability of the company solely by reason of being a member or manager of the limited liability company.
Thus, under R.C. 1705.48(B), Louis Zacks' status in the limited liability company does not, by itself, make him personally liable on the printing services account.
 {¶ 24} Appellee also provided a copy of the credit agreement that established the business relationship on the account. "[A]ny written record kept in the ordinary course of business and properly identified is admissible into evidence if relevant to the existence of the account or the amount due thereon." WolfAutomotive v. Rally Auto Parts, Inc. (1994), 95 Ohio App.3d 130,137; Baumann at 244. Here, the credit agreement is "relevant to the existence of the account" and pertinent to appellee's action on the account.
 {¶ 25} The trial court utilized the credit agreement, in part, to conclude that Louis Zacks is personally liable on the printing services account. In reviewing the credit agreement, we note that, if a contract is clear and unambiguous, a trial court's interpretation of the contract is a matter of law that we review de novo and without deference to the trial court's decision. Saunders v. Mortensen, 101 Ohio St.3d 86,2004-Ohio-24, at ¶ 9; Fuller Assoc. v. Heil Windermere Moving Storage Co., Stark App. No. 2004CA00242, 2005-Ohio-2599, at ¶ 20; G.F. Business Equip. Inc v. Liston (1982),7 Ohio App.3d 223, 225.
 {¶ 26} Appellee contends that Louis Zacks is personally liable on the account because he signed the credit agreement in his individual capacity and on behalf of Blushing Brides, LLC. InSpicer v. James (1985), 21 Ohio App.3d 222, 223, the Second District Court of Appeals held that a corporate officer is personally liable for damages on a contract that the officer signs individually and on behalf of the corporation. However, inSpicer, the appellate court also indicated that "[w]hether a corporate officer is personally liable upon a contract depends upon the form of the promise and the form of the signature." (Emphasis added.) Id. at 223. Here, the "form of the promise and the form of the signature" in the credit agreement established that Louis Zacks did not incur personal liability on the account when he signed the credit agreement in his individual capacity and on behalf of Blushing Brides, LLC. Rather, the credit agreement clearly denoted Blushing Brides, LLC, not Louis Zacks, as the purchaser on the account, and the agreement explicitly dictated that the purchaser, i.e., Blushing Brides, LLC, was to pay money and finance charges owed on the account. Likewise, Louis Zacks included his signatures under a clause that merely verified "on behalf of Purchaser that all information supplied by Purchaser herein is true."
 {¶ 27} Appellee also argues that testimony about the credit agreement established the parties' intention for Louis Zacks to incur personal liability on the account. However, in examining the credit agreement, we note that, under the parol evidence rule, a court is not to utilize "contemporaneous negotiations, understandings, promises, representations, or the like" when interpreting an unambiguous contract. Busler v. D H Mfg.,Inc. (1992), 81 Ohio App.3d 385, 390.
 {¶ 28} Here, as indicated above, the credit agreement unequivocally indicated that Louis Zacks incurs no personal liability on the printing services account. Thus, under the parol evidence rule, we do not consider testimony regarding "contemporaneous" understandings on Louis Zacks' personal liability when the parties entered into the credit agreement. SeeBusler at 390. Regardless, we note that testimony about the credit agreement did not establish the parties' intention for Louis Zacks to be personally liable on the account. Although Louis Zacks and Scott Gray confirmed that Louis Zacks signed the credit agreement individually and on behalf of Blushing Brides, LLC, the parties made no mention of their "contemporaneous" understandings on Louis Zacks' personal liability on the account when they entered into the credit agreement.
 {¶ 29} Therefore, based on the above, we conclude that the trial court erroneously based Louis Zacks' personal liability on the credit agreement. Next, we recognize that the trial court also utilized the May 22, 2002 promissory note to conclude that Louis Zacks is personally liable on the printing services account. As noted above, appellee initiated an action on the printing services account. However, in its decision, the trial court took the promissory note into consideration and concluded that the promissory note "reaffirmed [Louis Zacks'] personal liability" on the account.
 {¶ 30} A promissory note is "`a written promise to pay a certain sum of money at a future time[.]'" Gordon v. Koltnow,
Summit App. No. 22055, 2004-Ohio-5954, at ¶ 7, quoting Burke v.State (1922), 104 Ohio St. 220, 222. "[A] promissory note is an independent entity[.]" Id. As such, "[i]t is axiomatic that a promissory note * * * constitutes a separate enforceable contract." Fisk Alloy Wire, Inc. v. Hemsath, Lucas App. No. L-05-1097, 2005-Ohio-7007, at ¶ 40.
 {¶ 31} Pursuant to Gordon and Fisk Alloy Wire, Inc.,
because a promissory note is an "independent entity" and a "separate enforceable contract," the May 22, 2002 promissory note was based on separate and distinct consideration than the printing services account, which had already existed from July 2000. See, also, Groza-Vance v. Vance, 162 Ohio App.3d 510,2005-Ohio-3815, at ¶ 36 (recognizing that past consideration does not support a contract). In this regard, the promissory note is irrelevant to the parties' intentions on the printing services account and, likewise, on Louis Zacks' personal liability on the printing services account. Therefore, we conclude that the trial court erroneously found that the May 22, 2002 promissory note evinced Louis Zacks' personal liability on the printing services account.
 {¶ 32} For these same reasons, we note that the promissory note did not modify or terminate the parties' agreement on the account. Had the parties intended to have the promissory note discharge or modify any liability on the printing services account, it would have been necessary for the parties to meet the requirements for novation. A novation "is created where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." McGlothin v. Huffman (1994),94 Ohio App.3d 240, 244. Here, the promissory note made no indications of discharging any liability under the printing services account. Indeed, Scott Gray testified that the promissory note provided security "above and beyond the regular application" in the printing services account. (Tr. at 17.)
 {¶ 33} In so concluding, we acknowledge that the trial court did more than take the promissory note into consideration when determining that Louis Zacks is personally liable on the printing services account. Rather, the trial court also effectively rendered judgment on the promissory note when it calculated Louis Zacks' liability from money owed on the promissory note and when it calculated Louis Zacks' liability from the six per cent per annum interest rate in the promissory note.
 {¶ 34} "[I]t is well-established that an action under a promissory note is a separate and distinct cause of action[.]"Bertrand v. Lax, Portage App. No. 2004-P-0035, 2005-Ohio-3261, at ¶ 20, citing Dick v. Hyer (1916), 94 Ohio St. 351, paragraph one of the syllabus; Gevedon v. Hotopp, Montgomery App. No. 20673, 2005-Ohio-4597, at ¶ 29; Gordon at ¶ 10. Here, as noted above, appellee filed an action on the printing services account, not an action on the promissory note. Thus, through the complaint, the trial court had no authority to render judgment on the promissory note. Gordon at ¶ 10.
 {¶ 35} Likewise, we conclude that the parties did not trigger Civ.R. 15(B), which states that, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Here, the parties did not try a cause of action on the promissory note through implied or express consent under Civ.R. 15(B) because appellants' counsel would not acquiesce as such and, as appellee conceded in its appellate brief, "[a]ppellee made it clear at trial that it was not suing on the promissory note[.]" Accordingly, based on the above, the trial court erred by effectively rendering judgment against Louis Zacks individually on the promissory note in appellee's cause of action on the printing services account.
 {¶ 36} Consequently, we hold that the trial court erred by concluding that Louis Zacks was personally liable for damages to appellee on the printing services account. In concluding as such, we find moot appellants' next claim that the trial court erroneously ordered Blushing Brides, LLC to pay $7,532.66 plus interest in addition to Louis Zacks paying another $7,278.42 plus interest, despite appellee only alleging in the complaint that appellants owed $7,532.66 plus interest. Because we find the issue moot, we do not address it. App.R. 12(A)(1)(c). Thus, we next address appellants' claim in their single assignment of error that appellee breached the contract on the printing services account after the parties made modifications, thereby obviating any obligation for Blushing Brides, LLC to make payments on the account.
 {¶ 37} Appellants assert that, in May 2002, the parties modified the printing services account such that appellee would release magazines in proportion to the amount of payments that appellants made. Appellants claim that appellee breached the modified agreement by not shipping the requisite amount of magazines after appellants made payments in August and October 2002. In support of its claim that the parties modified the printing services account, appellants note testimony above that, in the spring of 2002, appellee printed 15,000 magazines and that appellee shipped a portion of those magazines after appellants paid a portion of the printing costs. Appellants further note that Scott Gray testified about appellee's intention to ship more magazines after appellants made additional payments.
 {¶ 38} "Subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary." Smaldino v. Larsick
(1993), 90 Ohio App.3d 691, 698. However, the record does not establish that the parties modified the printing services account in the spring of 2002 in the manner that appellants suggest. Rather, as Louis Zacks himself testified, in the spring of 2002, the parties agreed for appellee to print 15,000 magazines all at one time for one price, and, pursuant to the May 28, 2002 invoice that reaffirmed obligations in the credit agreement, Blushing Brides, LLC was to pay the unpaid balance on all of the printed magazines within 30 days of the invoice. As Scott Gray testified, Blushing Brides, LLC failed to pay in full the balance on the printing services account in accordance with documents detailing the terms of the account. Thus, Blushing Brides, LLC's actions constituted a breach of the printing services account, thereby subjecting Blushing Brides, LLC to liability. Garofalo v.Chicago Title Ins. Co. (1995), 104 Ohio App.3d 95, 108.
 {¶ 39} We next address appellants' contention that appellee is not entitled to monetary relief because appellee retained spring/summer 2002 magazines that total a value that exceeded the damages that appellee claimed in the complaint. Initially, we note conflicting testimony exists as to why appellee retained the magazines. Specifically, Scott Gray testified that appellee retained the magazines because it was awaiting shipping instructions, but Louis Zacks testified that he did provide appellee shipping instructions. Nonetheless, regardless of intent, appellee ultimately retained the magazines, and we address appellants' argument that appellee was obliged to sell the magazines.
 {¶ 40} "`It is a cardinal rule of contracts that an injured party is under a duty to mitigate its damages and may not recover those damages which it could have reasonably avoided.'" Wilsonv. Kreusch (1996), 111 Ohio App.3d 47, 52. Here, appellants argue that appellee could have avoided damages by selling the retained magazines. However, "`[t]he rule requiring one injured by a wrongful act or omission of another to minimize the damages resulting does not require a party to make extraordinary efforts, or to do what is unreasonable or impracticable.'" Id.
 {¶ 41} Scott Gray confirmed that appellee, a magazine printer, had no ability to sell the retained magazines and that the retained magazines had no value to the printing company. As a result, we conclude that it would have been "unreasonable or impracticable" to oblige appellee, a magazine printer, to sell the retained magazines, and mitigation principles did not apply to reduce appellee's monetary damages due to appellee retaining the magazines.
 {¶ 42} In summary, we conclude that the trial court erred by concluding that Louis Zacks is personally liable to appellee. However, we also conclude that the parties did not modify the printing services account in a manner that excused Blushing Brides, LLC from paying in full money owed on the printing services account in accordance with terms of the account. Lastly, we conclude that appellee did not improperly fail to mitigate damages upon retaining the spring/summer 2002 magazines. Therefore, based on the above, we sustain appellants' single assignment of error in part, overrule the assignment of error in part, and find moot the assignment of error in part. Accordingly, the judgment of the Franklin County Municipal Court is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment affirmed in part and reversed in part; causeremanded.
Klatt, P.J., and Deshler, J., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C)[NAF1], Article IV, Ohio Constitution.