DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Circleville Municipal Court judgment against Les Cline and Ethel Cline, plaintiffs below and appellants herein, on a claim they brought against Jay B. Writsel and Rebecca S. Writsel, defendants below and appellees herein. Appellants assign the following errors for review:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT COMMITTED ERROR IN DISMISSING DEFENDANT, REBECCA S. WRITSEL, AS A PARTY DEFENDANT, WITHOUT ANY MOTION OR REQUEST BY THE DEFENDANTS TO DO SO AND WITHOUT ANY EVIDENCE TO SUPPORT SUCH ACTION."
 SECOND ASSIGNMENT OF ERROR: *Page 2 
"THE TRIAL COURT COMMITTED ERROR IN CONSIDERING AND RELYING UPON THE PROFFERED TESTIMONY OF SET-OFF BY DEFENDANT, JAY B. WRITSEL, IN REACHING ITS DECISION WHEN SUCH TESTIMONY WAS IN THE RECORD ONLY AS A PROFFER."
THIRD ASSIGNMENT OF ERROR:
"THE JUDGMENT OF THE TRIAL COURT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE."
 {¶ 2} For many years, Rebecca and Jay Writsel (appellees) farmed 135 acres owned by the Hunsinger family (Hunsinger Farm). No written lease or contract existed between the Hunsingers and appellees, but apparently through that course of dealing appellees paid the Hunsingers biannually $75 per acre farmed.
 {¶ 3} Appellants acquired the Hunsinger Farm in December 2003. Mrs. Hunsinger apparently assured appellees that they could continue to farm the land the following year. Appellees paid the biannual rent payment ($5,107.50) to appellants in early 2004, but in May 2004 appellants told appellees not to farm seventy-five acres because they intended to subdivide and develop that particular acreage. Appellants offered to let appellees farm another property (the Ridgeway Farm), but this activity produced only minimal crop yield for that year. Thereafter, the appellees refused to make rent payments to appellants.
 {¶ 4} Appellants commenced the instant action as an action on account and claimed that appellees owed them $5,316.56. Appellees denied liability. Neither party, however, pled an equitable claim or defense nor requested equitable relief. At the bench trial the parties stipulated that no written contract existed, and then testified as to how they perceived their relationship. *Page 3 
 {¶ 5} After hearing the evidence, the trial court explained that no evidence existed that Rebecca Writsel (appellee) was involved in any of the transactions and, thus, dismissed her from the case altogether. The court then found that no contract existed whatsoever between the parties, which thus transformed the case into an "equity action." Based on a "pure equity analysis," the court entered judgment in favor of Jay Writsel (appellee). This appeal followed.
 I {¶ 6} Before we address the assignments of error on their merits, we pause to clarify the narrow issue presented to us for review. Appellants' claim is based "on an account." It is well-settled that a claim on account is founded in contract. See Asset Acceptance Corp. v.Proctor, 156 Ohio App.3d 60, 804 N.E.2d 975, 2004-Ohio-623, at ¶ 12;Gray Printing Co. v. Blushing Bridges, L.L.C., Franklin App. No. 05AP-646, 2006-Ohio-1656. at ¶ 21; Bertrand v. Lax, Portage App. No. 2004-P-35, 2005-Ohio-3261, at ¶ 25. Without a contract, however, there can be no breach of contract and no recovery on an account. Accordingly, the pivotal issue is whether some form of contract exists between the parties.
 {¶ 7} The trial court's judgment explicitly found "no contract existing between the parties," and that without a contract the case [became] an equity action. The court then analyzed equity considerations. We commend the court for its attempt to achieve a fair and balanced result, but as the appellees note in their brief, once the court determined that no contract existed, any further inquiry should have ceased. Neither party pled an equitable action nor request equity relief. Rather, this case is solely an action at law based *Page 4 
upon an alleged contract. With that caveat in mind, we turn our attention to appellants' assignments of error.
 II {¶ 8} We first consider appellants' third assignment of error as this is dispositive of the appeal. Appellants argue that the trial court's judgment is against the manifest weight of the evidence.
 {¶ 9} Generally, judgments supported by some competent and credible evidence should not be reversed as against the manifest weight of the evidence. Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7, 10,722 N.E.2d 1018; C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus. This standard of review is highly deferential and even "some" evidence is sufficient to support a court's judgment and to prevent a reversal. See Barkley v. Barkley (1997),119 Ohio App.3d 155, 159, 694 N.E.2d 989; Willman v. Cole, Adams App. No. 01CA725, 2002-Ohio-3596, ¶¶ 24.
 {¶ 10} The uncontroverted evidence reveals that the parties did not have an express contract to lease the Hunsinger Farm. No written contract existed and no testimony established that the parties had an oral contract. Jay Writsel (appellee) testified that he did not speak to the Clines (appellants) about the Hunsinger Farm, and Ethel Cline also admitted she did not speak to the Writsels about it. Les Cline's testimony was somewhat ambiguous and he did not clearly state whether he talked to the Writsels about leasing the Hunsinger Farm. All things considered, this is sufficient to establish that no express contract existed between the parties.
 {¶ 11} Our inquiry does not end at this juncture, however, because an action on an account can also be based on a contract implied in fact. See e.g. Cooper Pachell v. Haslage (2001), 142 Ohio App.3d 704, 707,756 N.E.2d 1248; Summa Health Sys. v. Viningre (2000),140 Ohio App.3d 780, 794, 749 N.E.2d 344. Implied contracts may be *Page 5 
inferred from the surrounding circumstances, including the parties' conduct and declarations that a contract exists as a matter of tacit understanding. Stepp v. Freeman (1997), 119 Ohio App.3d 68, 74,694 N.E.2d 510; Point E. Condominium Owners' Assn. v. Cedar House Assn. (1995), 104 Ohio App.3d 704, 712-713, 663 N.E.2d 343.
 {¶ 12} Our review of the trial transcript further reveals no evidence to establish an implied contract.[1] The Writsels (appellees) did pay the first half of the rent that they normally would have paid to lease the Hunsinger Farm. However, the Clines refused to allow them to farm seventy-five acres of the Hunsinger Farm. The Writsels apparently planted crops on the Ridgeway Farm, but this is more indicative of an implied contract to lease the Ridgeway Farm than it is of an implied contract to lease the Hunsinger Farm.
 {¶ 13} Moreover, Les Cline gave the following testimony:
"[Q] Okay now Mr. Cline you and your wife bought farm number 572 as we're referring to it from Mrs. Hunsinger?
[A] That's correct.
[Q] Okay. And at the time Mr. Writsel was farming that farm for Mrs. Hunsinger?
[A] Yes, Sir.
[Q] Okay. Now would you explain the conversation you had with Mr. Writsel?
[A] Well I had two or three conversations with Mr. Writsel. We was in the truck, he comes at my house one time and picked me up and then I went to his farm and picked him up. He was the only person that I talked to. I didn't talk Becky or anyone else. And when I told him, I think he was upset but cause he had been farming the farm for years and years and years but you know I bought it and but I'll continue..when I told him that I would give him the 135 acres on Ridgeway Road for the 75 acres that he had left to farm on the Hunsinger Road or Hunsinger Farm, it would have been at no extra cost, the it just happened and I don't know,I really don't know, I can't figure out what the deal is." (Emphasis added.) *Page 6 
 {¶ 14} Although it is not explicitly clear what Les Cline is referring to, one interpretation is that he did not know or did not understand what type of arrangement he was going to have with Jay Writsel. Without some basic idea of the business relationship, there could be no tacit understanding that an implied contract existed to lease the Hunsinger Farm.
 {¶ 15} In any event, it is clear the parties were not going to have the same long standing agreement that the Writsels had when Ms. Hunsinger owned the farm. The uncontroverted evidence shows that the Clines would not allow, as they certainly could decide to do as the new owners of the farm, the Writsels to raise crops on seventy five acres as the Hunsingers had done. Accordingly, no implied contract could exist on the same terms that existed in the Hunsinger arrangement.
 {¶ 16} For these reasons, we find no error in the trial court's conclusion that no contract existed between the parties. Accordingly, we find no merit in appellants' third assignment of error and it is hereby overruled.
 III {¶ 17} We now turn to appellants' first and second assignments of error. In their first assignment of error, appellants assert that the court erred by dismissing Rebecca Writsel. In their second assignment of error, appellants assert that the trial court erroneously considered proffered testimony in determining whether "the case should be decided on equity." However, neither argument involves the issue of whether an express or implied contract existed between the parties. Because the existence of a contract is the sine qua non for recovery here, and in light of the fact that we have found sufficient evidence to support the trial court's determination that no contract existed, these assignments of error have been rendered moot and may be disregarded. See App.R. 12(A)(1)(c). *Page 7 
 {¶ 18} Thus, having considered all of the errors assigned and argued in the briefs, and having found merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. *Sadler, J.: Concur in Judgment Opinion
* Lisa L. Sadler, Tenth Appellate District, sitting by assignment of the Ohio Supreme Court in Fourth Appellate District.
[1] Additionally, neither party argues in its brief that an implied contract existed between the parties. *Page 1