JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Javitch Block Eisen Rathbone, P.L.L. ("Javitch"), appeals the trial court's decision finding that its professional liability carrier did not owe a duty to defend or indemnify it with respect to the specific legal malpractice claims alleged.
 I. RELEVANT FACTS {¶ 2} Javitch obtained a lawyer's professional liability policy (the "policy") through Legion Insurance Company ("Legion"), which was effective October 12, 1999 through October 12, 2000. The policy specifically provides, in pertinent part, as follows:
 {¶ 3} "INSURING AGREEMENTS
 {¶ 4} "1. We will pay compensatory amounts for covered claims and claim expenses, up to our limit of liability, which you become legally obligated to pay as a result of a wrongful act in rendering or failing to render legal professional services by you or by anyone for whom you are legally liable.
 {¶ 5} "2. This policy applies only to claims first made against you and reported to us, in writing, during the policy period or any applicable extended reporting period, provided that the wrongful acts on which the claims are based first occurred or commenced:
 {¶ 6} "A. during the policy period; or
 {¶ 7} "B. prior to the policy period but on or after the retroactive date, if any, provided that prior to the effective date of the policy period:
 {¶ 8} "1. you were not aware that your conduct or lack of conduct constituted a wrongful act; and
 {¶ 9} "2. you did not give notice to any insurance company, including us. A claim is deemed first made against the named insured when the named insured first receives notice of it, and is deemed reported to us where we receive notice of it.
 {¶ 10} "* * *
 {¶ 11} "EXCLUSIONS
 {¶ 12} "We will not defend or pay, under this policy, for any:
 {¶ 13} "* * *
 {¶ 14} "5. claim based upon or arising out of bodily injury, sickness, emotional distress, disease or death of any person, or injury to or destruction of any tangible property including the loss of use of such property."
 {¶ 15} The policy defines "wrongful act" to mean "an actual or alleged negligent act, error or omission in rendering or failing to render legal professional services."
 {¶ 16} Approximately two months prior to the effective date of the policy, Javitch withdrew as counsel for Robert and Diane Berry (the "Berrys") in one of the four lawsuits it had filed on the Berrys' behalf. Although the four lawsuits were filed against four separate defendants, the causes of action stemmed from the same transaction; that is, the construction project at the Berrys' residence. Dissatisfied with Javitch's representation, the Berrys retained another law firm, Roetzel Andress ("Roetzel"), to review both their claims in the four lawsuits as well as Javitch's performance in handling their claims.
 {¶ 17} After reviewing the claims, Roetzel, on behalf of the Berrys, sent a letter advising Javitch that it had committed multiple violations of the code of professional responsibility, the Berrys could prove a prima facie case of legal malpractice against Javitch, and the Berrys had not consented to Javitch withdrawing as counsel on one of the four lawsuits. In addition, Roetzel's letter advised Javitch to put its malpractice carrier on notice of a claim and made a settlement demand to resolve the malpractice claim in the amount of attorneys fees plus $200,000, which was the estimated value of the Berrys' claims against one of the four defendants. Roetzel sent a second letter to Javitch advising it of another potential legal malpractice claim against a specific attorney and Javitch. These malpractice claims were the impetus behind Javitch's motion to withdraw as counsel from one of the four lawsuits. The Berrys also formally discharged Javitch from further representation in all of the matters in which they were originally retained and advised Javitch that they intended to pursue the potential disciplinary violations.
 {¶ 18} Subsequent to Javitch withdrawing as counsel, being discharged as counsel, and being advised of the Berrys' potential legal malpractice claims, Legion issued its policy to Javitch. For approximately one year after the Berrys filed their legal malpractice and spoliation action against Javitch, Legion provided a defense to Javitch under a reservation of rights. Legion later concluded that there was no coverage under the policy for Javitch's malpractice claim because the "wrongful act" occurred prior to the effective date of the policy and that the spoliation claim was expressly excluded from the policy's coverage. After Legion withdrew its defense of Javitch, Javitch settled with the Berrys.
 {¶ 19} Javitch then sought reimbursement of the settlement amount and attorneys fees, as well as a declaration that Legion owed Javitch a duty to defend the legal malpractice claim. However, Javitch did not file its suit against Legion, because Legion had filed for bankruptcy protection. Instead, Javitch filed suit against appellees, Target Capital Partners, Inc., Target Professional Associates, Target Capital Insurance, and Target Insurance Services (collectively referred to as "Target"), who, for this court's purposes, was Legion's third party administrator, providing claims services on Legion's behalf.[1]
 {¶ 20} The case was deemed to be complex and the trial court ordered that the threshold issues of the case must be decided first before the parties incurred additional and, perhaps unnecessary, expenses in going forward. The threshold issues included the following: (1) whether Legion had a legal duty to defend Javitch with respect to the Berrys' lawsuit; (2) whether Target owed Javitch a duty to defend; (3) whether Target breached any legal duty to Javitch because of Legion's denial of coverage and, if a breach occurred, what type of damages is Javitch entitled to; and (4) to what extent is the settlement between Javitch and the Berrys binding on Target. The trial court's order specifically stated that in the event the court renders a decision on the threshold issues of the case, the parties would be entitled to appeal those issues prior to proceeding to the second phase, which would entail prosecuting the RICO claims and civil conspiracy claims against Javitch's insurance agent, J.P. Flanagan.
 {¶ 21} Upon Target's motion for summary judgment, the trial court found in favor of Legion and Target that Legion owed no duty to defend Javitch with respect to the legal malpractice and spoliation claims pursuant to the policy, that Target owed no fiduciary duty to Javitch under the Legion policy, and that Target owed no duty to Javitch as a third party beneficiary of the Legion policy to defend Javitch. Javitch appeals the trial court's decision.
 II. JAVITCH'S APPEAL {¶ 22} Javitch first argues that the trial court erred in finding that Legion owed no duty to defend Javitch under the policy. Javitch then argues, in its second assignment of error, that in the event this court finds that Legion owed a duty to defend it, the trial court also erred in finding that Target owed no duty to Javitch as a third party beneficiary. Finally, Javitch argues, in its third assignment of error, that in the event this court finds that Legion owed a duty to defend it, the trial court erred in finding that Target owed no fiduciary duty to Javitch. Javitch's arguments are without merit.
 {¶ 23} According to the express language in the policy, a covered claim is one that occurs either (1) within the effective policy period or (2) before the effective policy period if the insured was unaware that the conduct constituted a wrongful act and the insured did not give notice to the insurer. Here, the wrongful act occurred prior to the effective policy period because Javitch was, at the very least, put on notice that the Berrys had retained Roetzel to investigate a possible legal malpractice claim against Javitch, that the Berrys could prove a prima facie case of legal malpractice, and that the Berrys made a settlement demand to resolve the legal malpractice claim. Javitch was keenly aware of these facts almost two months before the policy became effective, because it withdrew as counsel in one of the four lawsuits it filed on Javitch's behalf prior to the effective date of the policy, and was discharged by the Berrys in all its legal representation prior to the effective date of the policy.
 {¶ 24} Javitch's argument that the Berrys' complaint for legal malpractice and spoliation was not sufficiently specific to determine whether some or all of the alleged "wrongful acts" occurred before the effective date of the policy is not persuasive in light of the fact that the Berrys discharged Javitch as their counsel prior to the effective date of the policy. Javitch cannot claim that it was unaware that the Berrys were seriously pursuing a legal malpractice claim for its representation of the construction work performed at their house, especially when the Berrys hired Roetzel to review the claims and made a settlement demand to Javitch to resolve the legal malpractice claims. Even if this court were to agree that the Berrys' legal malpractice claims were vague, Javitch cannot ignore its awareness of a potential legal malpractice claim prior to the effective date of the Legion policy. Thus, pursuant to the specific terms of the policy, Legion owed no duty to defend Javitch.
 {¶ 25} Likewise, Legion's policy expressly excluded coverage for the Berrys' spoliation claim against Javitch. The Berrys alleged in their complaint against Javitch that they did not have use of certain documents relating to their cases against the contractors, subcontractors, and workers who performed construction work on their house because of Javitch's failure to turn over those documents. Loss of use of such tangible property is expressly excluded by the policy; therefore, Legion owed no duty to defend Javitch with respect to the Berrys' spoliation claim.
 {¶ 26} Because the trial court did not err in finding that Legion owed no duty to defend Javitch with respect to the Berrys' legal malpractice and spoliation claims, Javitch's second and third assignments of error are hereby moot.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Diane Karpinski, P.J., and Mary Eileen Kilbane, J., concur.
[1] Javitch also filed suit against its insurance agent, J.P. Flanagan, who sold it the Legion policy.