BERRY ET AL., APPELLEES, *v.* JAVITCH, BLOCK & RATHBONE, L.L.P.,

APPELLANT.

[Cite as *Berry v. Javitch, Block & Rathbone, L.L.P.*,

127 Ohio St.3d 480, 2010-Ohio-5772.]

*When parties to a tort claim have executed a settlement agreement and consent judgment entry, one party may not subsequently institute a separate cause of action for fraud in the inducement of the settlement agreement without seeking relief from the consent judgment and rescinding the settlement agreement.*

(No. 2009-1507 — Submitted May 11, 2010 — Decided December 2, 2010.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 91723, 182 Ohio App.3d 795, 2009-Ohio-3067.

_____

LUNDBERG STRATTON, J.

{¶ 1} Today this court must examine the following issue: When parties to a tort claim have executed a settlement agreement and consent judgment entry, may one party subsequently institute a separate cause of action for fraud in the inducement of the settlement agreement without seeking relief from the consent judgment and rescinding the settlement agreement? We answer in the negative and, therefore, reverse the judgment of the court of appeals.

**Facts**

{¶ 2} In 2000, Robert and Diane Berry, plaintiffs-appellees, filed a legal malpractice action against Javitch, Block & Rathbone, L.L.P., defendant-appellant ("Javitch"). One of the Berrys' interrogatories in that case requested "the name of insurer, type of policy/policies, policy number/numbers, and limits of coverage of

each and every insurance policy that may cover your alleged liability in this action, including umbrella coverage."

**{¶ 3}** Javitch responded:

**{¶ 4}** "Legion Insurance Company

**{¶ 5}** "Claims made policy 10-12-99 through 10-12-00

**{¶ 6}** "Policy No. PL 106-572-42

**{¶ 7}** "Limits: $1 million per claim/$3 million aggregate"

**{¶ 8}** A few months later, Javitch supplemented its response to the Berrys' interrogatory, amending its answer to state as follows: "Since providing our original answer to this Interrogatory we have been advised by representatives of Legion Insurance Company that there is no coverage for plaintiffs' claim."

**{¶ 9}** On December 21, 2001, Javitch and the Berrys negotiated a settlement agreement in which Javitch consented to judgment in the amount of $195,000, with Javitch paying $65,000 by February 2002. The Berrys, who were represented by counsel, were to dismiss with prejudice all of their claims against the individual attorneys in the lawsuit and provide a full release of all claims against them. The dismissal was to be held and not filed until Javitch completed the installment payments totaling $65,000 or until a settlement was agreed to with Legion Insurance for settlement of this case, or at such earlier time as the parties may agree. In addition, Javitch was to prepare the dismissal with prejudice of the counterclaim they had asserted against the Berrys. The dismissal was to be held and not filed with the court until the Berrys filed their notice of dismissal of their claims against Javitch.

**{¶ 10}** Following execution of the agreement, Javitch was to attempt to persuade Legion to satisfy the $195,000 judgment. After 90 days, if Javitch was unsuccessful, the Berrys were permitted to attempt to collect the $130,000 balance ($195,000 judgment, less $65,000 paid by Javitch) from Legion. The agreement stated that "under no circumstances will Javitch * * * pay Plaintiffs

under this agreement or under any judgment on the subject claim more than a total of $65,000." Javitch was unable to persuade Legion to pay the balance of the settlement, and the parties executed and filed the consent judgment on April 1, 2002. The Berrys were also unsuccessful in their attempt to collect from Legion.

{¶ 11} In 2006, the Berrys filed the current action against Javitch, alleging fraudulent misrepresentation, fraudulent concealment, gross negligent misrepresentation, and gross negligent concealment. The Berrys' claims stemmed from their allegation that Javitch did not disclose a claims-made policy from Clarendon National Insurance Company ("Clarendon") in effect from October 12, 1998, to October 12, 1999. The time for reporting a claim under the Clarendon policy expired October 22, 1999. The Berrys alleged that the first time that they became aware of the Clarendon policy was in July 2004. The Berrys alleged that Javitch's interrogatory responses (in which it failed to identify the Clarendon policy) were knowingly false and/or incomplete and were made intentionally to mislead the Berrys and that the Berrys ultimately had relied on those responses to their detriment by entering into the settlement agreement.

{¶ 12} Javitch filed a motion for summary judgment, arguing that the Berrys' claims were barred by the one-year limitations period for relief from judgment set forth in Civ.R. 60(B)(3), that the Berrys could not elect to affirm the settlement agreement and consent judgment and then separately sue for fraud, and that the Berrys could not establish the requisite elements of their claims. Javitch alleged that it had not disclosed the Clarendon policy, because by the policy's express language, the time for reporting a claim expired October 22, 1999, and no claim had been made during the effective dates of the policy. Because the time for reporting claims to trigger the Clarendon policy had long since expired, even if Javitch had identified the policy in its answers to the interrogatory and the Berrys' counsel had immediately used that information, Javitch alleged that Clarendon would have owed neither coverage nor an indemnity obligation to

Javitch or the Berrys. The trial court granted Javitch's summary judgment motion without opinion.

{¶ 13} On appeal, the Court of Appeals for Cuyahoga County, relying on *Frederickson v. Nye* (1924), 110 Ohio St. 459, 144 N.E. 299, reversed the judgment of the trial court and remanded the cause for further proceedings, finding that Civ.R. 60(B)(3) does not apply, because the Berrys could and did choose to bring a separate action for fraud without rescinding the settlement agreement and seeking relief from the consent judgment entry. The court also held that a material issue of fact remains as to whether Javitch purposefully withheld the existence of the Clarendon policy.

{¶ 14} The cause is now before this court pursuant to the acceptance of a discretionary appeal.

**Law and Analysis**

{¶ 15} The parties executed a settlement agreement in 2001 that stated:

{¶ 16} "Plaintiffs will not release Javitch * * * with respect to the amount of the consent judgment, until such time as that judgment is satisfied by Legion Insurance Company or the claim against Legion Insurance Company for that judgment is otherwise resolved. The release will include, inter alia, an acknowledgement that the settlement constitutes a resolution of disputed claims."

{¶ 17} In spite of the language of the settlement agreement, the court of appeals concluded that the Berrys could choose to bring a separate action for fraud without moving for relief from the consent judgment entry, holding that Civ.R. 60(B)(3) does not apply, because the Berrys were not looking to rescind the settlement agreement, but rather were suing for damages caused by Javitch's alleged fraud. On appeal, Javitch argues that the Berrys failed to timely allege fraud pursuant to the one-year limitations period set forth in Civ.R. 60(B)(3). We agree with Javitch.

*Release*

{¶ 18} The parties disagree as to whether there was a valid release in this case. The Berrys argue that they did not release Javitch, because the entire settlement amount of $195,000 was never paid. Javitch argues that the Berrys *did* knowingly and voluntarily release Javitch because the Berrys, while represented by counsel, entered into the settlement agreement when they knew that Legion was denying coverage. Moreover, the Berrys had opposed Javitch's attempts to obtain a stay of the lawsuit so that it could get a declaration from Legion concerning coverage. The Berrys, apparently under advisement of counsel, believed a settlement to be in their best interest. Javitch argues that the claim against Legion Insurance Company was "otherwise resolved," which under the terms of the settlement agreement should have triggered the Berrys' release of Javitch, and that by signing the settlement agreement, the Berrys acknowledged and agreed at paragraph 11 of the agreement: "It is expressly understood that under no circumstances will Javitch * * * pay Plaintiffs under this agreement or under any judgment on the subject claim more than a total of $65,000, plus penalties and attorneys' fees, as set forth in paragraph 10."

{¶ 19} While there is no evidence that the Berrys executed a release of Javitch, the parties entered into a valid settlement agreement. Both parties performed as promised in the agreement. As required, Javitch paid $65,000 to the Berrys and attempted to persuade its insurance carrier to provide coverage for the full $195,000 consent judgment. When Legion denied coverage, the Berrys pursued a claim against both Legion and Clarendon. Both claims were denied. Although Legion did not satisfy the remainder of the consent judgment, the claim against Legion Insurance Company for that judgment was "otherwise resolved." Finally, the trial court dismissed the case pursuant to the agreement, thereby dismissing all claims and counterclaims of the parties.

{¶ 20} The parties performed all conditions of the settlement agreement, except that the Berrys did not provide a full release of all claims as required by

the settlement agreement once all the terms and considerations had been met. Instead, the Berrys chose to pursue this action against Javitch, ironically now claiming that there was no valid release. However, we conclude that the parties' actions and fulfillment of the settlement agreement constituted a release of all claims.

*Fraud in the Inducement Action*

{¶ 21} This court has long held that an action for fraud in the inducement of a settlement of a tort claim is prohibited unless the plaintiff tenders back the consideration received and rescinds the release. However, the court of appeals arrived at a different result, relying on *Frederickson v. Nye*, 110 Ohio St. 459, 144 N.E. 299, wherein we addressed the issue of election of remedies and held: "Where the remedies afforded are inconsistent, it is the election of one that bars the other; where they are consistent, it is the satisfaction which operates as a bar. It is the inconsistency of the demands that makes the election of one remedial right an estoppel against the assertion of the other, and not the fact that the forms of action are different." Id. at 466. Citing *Frederickson,* the court of appeals concluded that the limitation in Civ.R. 60(B) requiring relief to be sought within one year was inapplicable, and it held that a material issue of fact still remained as to whether Javitch purposefully withheld the existence of the Clarendon policy.

{¶ 22} We disagree with the court of appeals' determination that *Frederickson* applies to these facts. For the doctrine of election of remedies to apply, at least two remedies must exist at the same time. In this case, however, the remedies do not exist at the same time. In order for one remedy to exist, i.e., the separate action for fraud, the plaintiffs must rescind the other remedy, i.e., the settlement agreement.

{¶ 23} In reversing the judgment of the trial court, the court of appeals ignored a long line of contrary precedent. In *Picklesimer v. Baltimore & O.R. Co.* (1949), 151 Ohio St. 1, 38 O.O. 477, 84 N.E.2d 214, we distinguished between a

release that is void and one that is voidable: "In the settlement of a tort claim for damages arising from personal injuries, a release obtained by fraud in the factum is void, and the claimant may maintain a subsequent action without returning or tendering the consideration he received. In such a settlement a release obtained by *fraud in the inducement is voidable*, *and a subsequent action may not be maintained by the claimant without returning or tendering the consideration he received.* In such a settlement a misrepresentation as to the nature or extent of the injuries constitutes fraud in the inducement; and the fact that the claimant asks damages for such fraud does not relieve him of the obligation to return or tender the consideration he received." (Emphasis added.) Id., paragraphs one, two, and three of the syllabus.

{¶ 24} We distinguished between a release that is void and one that is voidable, noting that an agreement is void when a party has been fraudulently prevented from knowing that he or she has signed a release or its contents, and is merely voidable when the party alleges fraud or misrepresentation as to the facts inducing the party to settle. Id. at 5. The Berrys do not argue that they were prevented from knowing that they signed a settlement agreement or from knowing the contents of the settlement agreement. Rather, the Berrys argue that Javitch fraudulently misrepresented facts to induce them to settle, making this a fraud in the inducement claim.

{¶ 25} In *Shallenberger v. Motorists Mut. Ins. Co.* (1958), 167 Ohio St. 494, 5 O.O.2d 173, 150 N.E.2d 295, we followed *Picklesimer*. The plaintiff in *Shallenberger* filed an action for fraud related to representations by the defendant that she alleged had induced her to sign a release of claims for personal injuries and damage to personal property arising from an automobile accident. This court held:

{¶ 26} "[T]he releasor has merely agreed for a consideration not to enforce his tort claim.

7

**{¶ 27}** "To allow the releasor to recover more than anyone agreed to give for his tort claim, because the releasor was induced by fraud * * *, is to permit the releasor in effect to enforce part of the tort claim that he agreed for a consideration not to enforce. * * * If he desires to do that, he must set aside, not affirm, his agreement not to sue * * *." Id. at 501-502, 5 O.O.2d 173, 150 N.E.2d 295, citing *Picklesimer,* 151 Ohio St. 1, 38 O.O. 477, 84 N.E.2d 214.

**{¶ 28}** Finally, in *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 552 N.E.2d 207, a case involving a breach of contract of employment claim, we further reaffirmed the principles previously espoused in *Picklesimer* and *Shallenberger*: "A releasor may not attack the validity of a release for fraud in the inducement unless he first tenders back the consideration he received for making the release." *Haller*, paragraph two of the syllabus.

**{¶ 29}** As the dissenting appellate judge in this case noted, when the Berrys settled with Javitch, they were keenly aware that Legion was denying coverage because the claim was outside the policy's time frame. Nonetheless, the Berrys agreed to accept $65,000 from Javitch without the possibility of recovering the balance from Javitch if Legion continued to deny coverage. The dissenter argues that this "proves that the Berrys were eager to settle for whatever Javitch could provide, regardless of coverage from an insurance carrier." *Berry v. Javitch, Block & Rathbone, L.L.P.*, 182 Ohio App.3d 795, 2009-Ohio-3067, 915 N.E.2d 382, ¶ 32. We agree.

**{¶ 30}** Applying the doctrine of election of remedies from *Frederickson* in the context of this settlement agreement and consent judgment would permit the Berrys to enforce part of a tort claim that it accepted consideration not to enforce. See *Shallenberger*, 167 Ohio St. at 501, 5 O.O.2d 173, 150 N.E.2d 295. The Berrys cannot be permitted to retain the benefit of the settlement agreement and at the same time attack the validity of that agreement. The appellate court's

8

judgment not only ignores long-standing precedent of this court but also endangers the finality of judgments.

### Conclusion

{¶ 31} Clearly, our long line of cases regarding the appropriate method for rescinding settlement agreements requires reversal in this case. The plaintiffs alleged fraud in the inducement, which, if true, would render the settlement agreement voidable and require the releasor to tender back the consideration paid before attacking the agreement. The appropriate method to seek relief was through Civ.R. 60(B). Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed.

O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

BROWN, C.J., and FROELICH, J., dissent.

JEFFREY E. FROELICH, J., of the Second Appellate District, sitting for O'CONNOR, J.

_____

**FROELICH, J., dissenting.**

{¶ 32} I respectfully dissent.

{¶ 33} In response to an interrogatory in a legal-malpractice action, Javitch, Block & Rathbone, L.L.P. ("the law firm"), misrepresented to Robert and Diane Berry that it had no malpractice insurance that would cover their claim. The Berrys subsequently accepted a settlement from the law firm and in exchange the Berrys were to release their claims against the law firm. Two and a half years later, the Berrys discovered the alleged misrepresentation. I would hold that the Berrys were entitled to either rescind the settlement or sue the law firm for fraud. If the Berrys had chosen to rescind the settlement, they would have had to return the settlement proceeds, arguing that they would not have settled the claim had

they known of the possible existence of insurance, and the litigation and/or negotiations on the underlying claim would begin again. But the Berrys instead chose to sue the law firm for fraud, arguing that they were entitled to keep the settlement money but that they had suffered damages because of the fraud, i.e., the difference between the amount they would have settled for had they known of the insurance and the amount for which they did settle. In such cases, the party injured through no fault of his own can elect the remedy.

## I

{¶ 34} On August 26, 1999, the Berrys' attorney wrote to the law firm notifying it of his clients' potential malpractice claim and suggesting that the law firm put its malpractice carrier on notice. In June 2000, the Berrys sued the law firm for malpractice that had allegedly occurred in 1999. The law firm reported the claim to Legion Insurance, with which it had a claims-made policy in effect from October 12, 1999, through October 12, 2000. Legion denied coverage, asserting that the law firm had been on notice of the claim prior to the effective date of this policy. The malpractice case proceeded.

{¶ 35} During discovery, and in response to an interrogatory that requested "the name of insurer, type of policy/policies, policy number/numbers, and limit and limits of each and every insurance policy that may cover your alleged liability in this action, including umbrella coverage," the law firm answered with the Legion Insurance claims-made policy effective October 12, 1999, through October 12, 2000. This was later supplemented with the report that Legion had advised the law firm that "there is no coverage for plaintiff's claim." The law firm did not disclose a claims-made policy it had with Clarendon Insurance, with effective dates from October 12, 1998, to October 12, 1999.

{¶ 36} The law firm sued Legion, claiming that Legion owed it a duty to defend or indemnify it with respect to the malpractice claim; Legion was granted summary judgment. The appellate court affirmed the summary judgment, stating

that Legion owed no duty to defend or indemnify, because the law firm was aware of a "potential legal malpractice claim prior to the [October 1999] effective date of the Legion policy." *Javitch, Block, Eisen & Rathbone, P.L.L. v. Target Capital Partners, Inc.*, Cuyahoga App. No. 86926, 2006-Ohio-3325, ¶ 24.

{¶ 37} The parties settled the malpractice claim on December 21, 2001, and a consent decree was filed on April 1, 2002. The terms of the settlement are set forth in the majority's opinion. The Berrys did not become aware until approximately July 2004 (1) of the existence of the Clarendon policy and (2) that in the same month that the law firm had responded to the interrogatory by listing only Legion, the law firm had put Clarendon "on notice of a claim which may be covered by [Clarendon's] policy because of events occurring during [Clarendon's] policy period which allegedly constituted a claim."

{¶ 38} In 2006, the Berrys sued the law firm, alleging fraudulent misrepresentation, fraudulent concealment, gross negligent misrepresentation, and gross negligent concealment. The law firm filed a motion for summary judgment arguing, among other things, that the Berrys could not file a separate action for fraud but rather must rescind the settlement agreement and tender back the settlement money that they had received; the law firm also contended that the only way to rescind the agreement because of fraud was by filing a Civ.R. 60(B)(3) motion. Since no Civ.R. 60(B)(3) motion had been filed (the one-year time period for doing so had elapsed), questions concerning allegations of fraud by a party and fraud upon the court were not addressed by the appellate court.

{¶ 39} The trial court tersely sustained the defendant's motion for summary judgment, finding that there was no genuine issue of material fact. The court of appeals reversed the trial court (with one judge dissenting), holding that the Berrys had elected to sue for fraud and not to rescind the settlement and that there was a genuine issue as to whether the law firm had fraudulently misrepresented its insurance coverage.

**{¶ 40}** The law firm argued that its failure to disclose Clarendon to the Berrys was not an attempt to perpetrate a fraud, but was instead an accurate answer to the interrogatory, since the time for reporting a claim to Clarendon had expired and no claim had been made during the effective dates (even though it had written to Clarendon demanding coverage); moreover, it argued, there would be no reason for the law firm not to disclose a potential insurer to a potential claimant. These arguments may be accurate, but the majority of the court of appeals held that this was a factual issue for a jury to decide; this is not the question before us.

## II

**{¶ 41}** According to the majority, the question before us relates to the "appropriate method for rescinding settlement agreements." Majority opinion at ¶ 31. But the Berrys did not seek to rescind the agreement. Accordingly, the question before us is whether the Berrys' *only* option was to seek rescission of the settlement once the alleged fraud in the inducement was discovered.

**{¶ 42}** First, I am not sure that the record reflects a settlement of the underlying malpractice claim. But even if the settlement agreement is enforceable, it states, "[U]nder no circumstances will [the law firm] * * * pay [the Berrys] under this agreement or under any judgment *on the subject claim* more than a total of $65,000." (Emphasis added.) However, the Berrys did not seek to rescind the agreement "on the subject claim" (i.e., the malpractice claim).[1]

---

1. {¶ a} Continuing with the belief that the Berrys seek to rescind the agreement, the majority holds that the only remedy is a Civ.R. 60(B)(3) motion, which must be filed within the rule's one-year time period. Neither the trial court nor the appellate court addressed whether the Berrys' claim could have been raised under Civ.R. 60(B)(5) ("any other reason justifying relief from the judgment"). Contrast *Trenner v. Trenner* (Jan. 31, 2002), Franklin App. No. 01AP-743, 2002 WL 124719, as to whether such issues should be analyzed under Civ.R. 60(B)(5), which does not contain the one-year time requirement; and *Dickson v. Dickson* (Jan. 23, 1997), Cuyahoga App. No. 71006, 1997 WL 25527, at *1, holding that Civ.R. 60(B)(3) requires the movant "to file the motion within one year from the date he learned of the alleged fraud."

**{¶ 43}** The majority holds that the Berrys cannot elect between a suit for fraud and one for rescission because these remedies do not exist at the same time. This holding accepts the law firm's argument that a party damaged by a settlement induced by fraud cannot sue for that fraud without first setting aside the fraudulent settlement. This conclusion somehow combines both a tautology and a logical inconsistency. It is a tautology because it uses different words to say the same thing, and it is logically inconsistent because once the fraudulent settlement is set aside, a party is no longer damaged by the (now nonexistent) fraudulent settlement.

**{¶ 44}** Citing *Picklesimer v. Baltimore & Ohio RR. Co.* (1949), 151 Ohio St. 1, 38 O.O. 477, 84 N.E.2d 214, *Shallenberger v. Motorists Mut. Ins. Co.* (1958), 167 Ohio St. 494, 5 O.O.2d 173, 150 N.E.2d 295, and *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 552 N.E.2d 207, the law firm contends that the settlement was not "void," since the parties knew that it was a settlement, but that it is only "voidable," since there was allegedly fraud in the inducement; therefore, the Berrys must first tender back the settlement money in order to void the voidable agreement. Stated differently, the law firm claims that settlements based on fraud in the inducement are voidable, not void, and require return of the settlement money; and because this case involved, at most, fraud in the inducement, the aggrieved parties, the Berrys, were required to return the settlement money. The law firm's syllogism is correct, but irrelevant since the Berrys do not seek to void the settlement and obtain damages for the underlying

---

{¶ b} If the settlement had been entered into before the lawsuit was filed, as are the vast majority of settlements, a Civ.R. 60 motion would not be available. In such a situation, the Berrys' remedy would be to (1) sue for rescission based on fraud and then, if successful, litigate the underlying malpractice claim; such a rescission action would be controlled by the four-year statute of limitations for fraud, R.C. 2305.09(C), which runs from the date the fraud was or should have been discovered, *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206; or (2) sue for fraud. The same statute (R.C. 2305.09(C)) would apply to the Berrys in bringing their independent fraud complaint, but such an action is apparently not available to them, because their case was settled with a court entry.

claim of legal malpractice. Rather, the Berrys contend that there was a subsequent act of fraud, and they seek damages resulting from that separate act of fraud, not for the underlying tort claim.

{¶ 45} Contrary to the law firm's reading of *Picklesimer*, *Shallenberger*, and *Haller*, those cases do not require a party to seek to void a contract induced by fraud. In *Haller*, the plaintiff sold his stock in a family business and the new company's owners agreed to employ him for three years. When he was terminated before the three years had elapsed, he invoked an arbitration clause and alleged that he had been fired without cause. The parties met, without attorneys, and the new owner allegedly told Haller that unless he (Haller) accepted a $50,000 settlement, the company would close and Haller would receive nothing. Haller accepted, and the agreement was reduced to a written contract and signed by the parties the same day.

{¶ 46} The company paid the $50,000, but Haller attempted to obtain additional money from it. In connection with these attempts, Haller was indicted for extortion. Haller then sued, alleging that fraud by the new company and its principals had induced him to commit a crime. He also alleged additional causes of action arising from his employment that predated the settlement agreement and fraud in the negotiation of the settlement.

{¶ 47} *Haller* held that "a releasor ought not be allowed to retain the benefit of his act of compromise and at the same time attack its validity." Id., 50 Ohio St.3d at 14, 552 N.E.2d 207. The court held that to avoid the rule that "[a] release of a cause of action for damages is ordinarily an absolute bar to a later *action on any claim encompassed within the release, * * * the releasor must allege that the release was obtained by fraud and that he has tendered back the consideration received for his release.*" (Emphasis added.) Id. at 13, relying on *Manhattan Life Ins. Co. v. Burke* (1903), 69 Ohio St. 294, 70 N.E. 74.

14

**{¶ 48}** *Manhattan Life* involved a dispute between a beneficiary and a life insurance company as to the liability of the company. The dispute was settled for payment of less than the possible full death benefit. The beneficiary nonetheless subsequently sued for the full value. The defendant insurance company pleaded the settlement as a defense and the plaintiff responded that the settlement had been obtained by fraud. The court held that the plaintiff's response, without a payment or tender of the amount already received, was "insufficient in law." Id. at paragraph two of the syllabus. However, in so ruling, the court specifically noted that the suit had been brought "upon the original contract; it was not a suit to rescind a contract, or to reform it, *nor an action for damages on account of fraud*." (Emphasis added.) Id. at 301, 70 N.E. 74. Rather, the court framed the question as "can the party claimant maintain an action at law *on the original contract* without tendering back the sum received, even though his assent to the settlement was obtained by the fraudulent and false representation of the other party?" (Emphasis added.) Id. at 302.

**{¶ 49}** In both *Haller* and *Manhattan Life*, the court dealt with a releasor who was attacking the settlement so he could litigate the underlying complaint (i.e., the reason for his termination in *Haller* or the proper amount of the insurance proceeds in *Manhattan Life*), not "for damages on account of fraud." *Haller* specifically relates to when a releasor "may not attack the validity of a release for fraud."

**{¶ 50}** *Haller* cites *Shallenberger*, in which a tort victim (releasor) was involved in an accident that damaged the borrowed car she was driving. She sued the insurance company (releasee) of the alleged tortfeasor for fraud arising out of the execution of a release. The plaintiff received no money in the release (the consideration was the insurance company's promise to pay property damages to its insured, the car's owner) and alleged in her complaint that the fraud deprived her of her right to recover for her personal injuries from the tortfeasor (i.e., her

original claim). The Supreme Court upheld the demurrer to the petition. The court noted that a releasor cannot "logically affirm an agreement not to sue for his personal injuries (cases allowing recovery in deceit for fraud inducing release of a tort claim require such affirmance as a necessary basis for such recovery) and yet recover something on account of those personal injuries." *Shallenberger*, 167 Ohio St. at 502, 5 O.O.2d 173, 150 N.E.2d 295. Similarly, the court stated that its decisions "have consistently held that a releasor of an unliquidated claim cannot recover anything *on account of that claim* without first avoiding the release; * * * [and] such releasor cannot undertake to avoid that release without first tendering back the consideration received therefor." (Emphasis added.) Id. at 504, citing *Picklesimer* and *Manhattan Life.*

{¶ 51} The law firm relies heavily on *Picklesimer,* which held that "a release obtained by fraud in the inducement is voidable, and a subsequent action may not be maintained by the claimant without returning or tendering the consideration he received." *Picklesimer*, 151 Ohio St. 1, 38 O.O. 477, 84 N.E.2d 214, paragraph two of the syllabus. Picklesimer sued his employer, the railroad, for personal injuries, alleging that the employer's physicians falsely represented to him that his injuries were not permanent, causing him to release the claim for $900, a fraction of its potential worth. The trial court sustained a demurrer based on the plaintiff's failure to allege that he had returned or offered to return the $900.

{¶ 52} Picklesimer argued that this averment was not necessary, because "he has elected to sue for damages for the alleged fraud." Id. at 7. The Supreme Court examined his pleadings and found that the complaint's allegations related only to negligence, personal injuries, and pain and suffering. It reasoned that "[t]he simple addition of the claim of fraud cannot be regarded as a bit of legerdemain by which the plaintiff somehow has eliminated any of the original elements of negligence, injury and proximate cause." Id. The negative pregnant

16

of *Picklesimer* is that there would be a different result had the plaintiff "elected to sue for damages for the alleged fraud" and supported that with allegations relating to the fraud and not to the original tort.

{¶ 53} The damages for fraud in the inducement of a settlement are not the same as those that the plaintiff would have received if the underlying tort were successfully litigated. The Supreme Court of Hawaii exhaustively analyzed this question and concluded that the aim of compensation in all cases of fraud is to put the plaintiff in the position he or she would have been in had he or she not been defrauded. *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont DeNemours & Co.* (2007), 116 Hawai'i 277, 172 P.3d 1021. To determine damages in a claim of fraudulent settlement, the trier of fact determines the fair compromise value of the claims at the time of the settlement, i.e., the probable amount of settlement in the absence of fraud after considering all known or foreseeable facts and circumstances affecting the value of the claims on the date of settlement. Id. at 298.

{¶ 54} Factors for determining whether a settlement of a tort claim was made in good faith or by means of fraud include, among others (1) the type of case and difficulty of proof at trial, (2) the realistic approximation of total damages that the plaintiff seeks, (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial, (4) the predicted expense of litigation, (5) the amount of consideration paid to settle the claims, and (6) the insurance policy limits and solvency of the tortfeasor. Id. at 300. This is no more difficult than establishing and measuring damages in any fraud case in which the person defrauded has, because of the fraud, not pursued alternative courses of action, and the results of those alternative courses therefore remain, to some degree, speculative. Id. at 292-293, citing *Leibert v. Fin. Factors, Ltd.* (1990), 71 Hawai'i 285, 290-291, 788 P.2d 833, and 3 Restatement of the Law 2d, Torts (1977), Section 549.

17

**{¶ 55}** It is certainly correct that a party cannot accept a settlement, sign a release, affirm the release, keep the money, and then sue for the *same* damages. However, the Berrys' damages herein are limited to the "actual settlement value" and other expenses caused by the fraud, not the same damages for which they settled.[2] *Matsuura v. Alston & Bird* (C.A.9, 1999), 166 F.3d 1006, 1010; *DiSabatino v. United States Fid. & Guar. Co.* (D.Del.1986), 635 F.Supp. 350. All the cases cited by the law firm, upon examination, relate to a plaintiff's attempt to go back and sue for the same underlying tort for which the plaintiff recovered a settlement.[3]

**{¶ 56}** To preclude the defrauded party from pursuing a claim for fraud in the inducement of a settlement would leave the defrauded party without any remedy for fraud intentionally committed upon him. Although the issue was not raised by either party, this result would seem to be inconsistent with years of common-law fraud claims and, thus, in contravention of Section 16, Article I of the Ohio Constitution, which states, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

**{¶ 57}** Moreover, allowing a plaintiff to obtain damages for fraud in the inducement of a contract through a separate claim is well established in Ohio. In *Colvenbach v. McLaughlin* (June 18, 1982), Ashtabula App. No. 1082, 1982 WL 5784, plaintiffs purchased a building for $50,000, which had been represented to

---

2. They may also include punitive damages, attorney fees, and certain expenses, which are allowed in fraud, but probably not available in the underlying malpractice. Further, any amount received in the settlement of the underlying malpractice claim would necessarily be encompassed in the "actual settlement value" and would entail a setoff.

3. See also *Sokol v. Swan Super Cleaners, Inc.* (1985), 26 Ohio App.3d 128, 131, 26 OBR 340, 498 N.E.2d 503 (finding that *Shallenberger* "held that the plaintiff first had to set aside the release *before proceeding to litigate her claims on their merits*" [emphasis added]).

them by the seller as the appraised value. After paying $37,500, the plaintiffs determined that the value was only $35,000. The plaintiffs stopped making payments and filed suit "alleging fraudulent misrepresentation and seeking alternative remedies of rescission or compensatory damages." Id. at *1. Before trial, the plaintiffs elected "to maintain the contract and seek compensatory damages." Id. The jury returned a verdict for the defendant "due to lack of clear and convincing evidence." Id.

{¶ 58} The court of appeals reversed and remanded, holding that clear and convincing evidence would be required only if the plaintiffs had elected the equitable remedy of rescission. "[B]ut in an ordinary action at law for money only based on fraud, a preponderance of the evidence is sufficient to prove such fraud." Id. The Eleventh District reasoned:

{¶ 59} "The principle is explained in [Frederickson v. Nye] (1924), 110 Ohio St. 459, at 468-469 [144 N.E. 299], quoting from [Clark v. Kirby], 204 App. Div., 447, 451, 198 N.Y.S. 172, 175:

{¶ 60} " ' "The law is elementary that where one has suffered by reason of the misrepresentation of another, and has been led to part with his money in reliance upon said false and fraudulent misrepresentation, he has three independent remedies: First, he may affirm the contract into which he had been induced to enter and sue for his damages for the fraud perpetrated upon him. Second, he may rescind the contract itself and bring action to recover back the moneys which he has paid. Third, he may bring an action in the nature of the action at bar in a court of equity to obtain a rescission of the contract into which he had been induced to enter, with incidental relief. An action for rescission is entirely independent [of] and inconsistent with an action for damages by reason of the false and fraudulent representations. In the first [third] action the contract is treated as a nullity and the plaintiff asks the intervention of a court of equity to obtain a nullification of said contract. In the action for damages for fraudulent

19

representations which induced him to enter into the contract, he affirms the contract and brings his action to recover damages by reason of such false representations. In the one action he treats the contract as nonexistent, and in the other action he affirms the contract. Each remedy is inconsistent with the other.'"

**{¶ 61}** "In the instant case, plaintiffs elected to affirm the contract and seek recovery of damages for the alleged misrepresentations. Since they did not elect to set aside the contract, they were required to prove the fraud only by a preponderance and not by clear and convincing evidence." *Colvenbach*, supra, at *1-2.

**{¶ 62}** *Frederickson*'s fact pattern is convoluted and it is made even more abstruse by the pleading requirements and writing style of the day. Suffice it to say that the Nyes sued in Hancock County to establish an equitable trust on certain property in favor of the Nyes; they also sued in Seneca County in an action "at law in deceit with a prayer for money judgment," id., 110 Ohio St. at 465, 144 N.E. 299. The court's syllabus states that an election of one remedial right is a bar to the pursuit of another only when the remedies are inconsistent and the election is made with knowledge and intention and purpose to elect. The majority opinion in this case says that *Frederickson*'s holding is not applicable here, since the "remedies do not exist at the same time. In order for one remedy to exist, i.e., the separate action for fraud, the [Berrys] must rescind the other remedy, i.e., the settlement agreement." Majority opinion at ¶ 22. But the opposite appears to be true, i.e., if the Berrys rescind the agreement, there is no separate action for fraud, since there would then be no agreement that was fraudulently induced. See, e.g., *Adams v. Wnek* (May 11, 1994), Hamilton App. No. C-930081, 1994 WL 176913 (stating that "rescission nullifies a contract, extinguishing it for all purposes * * * and, therefore, precludes the assertion of any rights predicated upon it"), citing *Frederickson*.

**{¶ 63}** In *Summa Health Sys. v. Viningre* (2000), 140 Ohio App.3d 780, 749 N.E.2d 344, a patient had signed an agreement not to sue a hospital for malpractice, in exchange for $20,000; allegedly the hospital's risk-management department had also promised that the hospital would write off all the patient's medical bills, which totaled just over $13,000. When the hospital sued on the account, the patient counterclaimed for fraud and for violation of the Consumer Sales Practices Act ("CSPA") (the trial court granted the hospital a directed verdict on the CSPA claim, but that judgment was later reversed by the appellate court, and the cause was remanded).

**{¶ 64}** The jury found for the patient on the hospital's account action and on the patient's fraud claim and awarded her $10,000 in compensatory damages, $30,000 in punitive damages, and reasonable attorney fees (which were later determined by the court to be $40,000). One of the hospital's assignments of error was that the patient/releasor was required to return the $20,000 settlement if she desired to pursue the claim despite the release. The appellate court held that the hospital's reliance on *Shallenberger* was misplaced, since the patient was not seeking to vacate the release and sue for malpractice, but rather was suing for fraud. The patient had specifically stated that she never wanted to litigate the malpractice case and have her illness discussed in public, and thus settled that claim. When the hospital sued on the account, she countersued for fraud, claiming that she had suffered emotional trauma and embarrassment from having to discuss her medical condition with potential employers and creditors who questioned her credit status. Therefore, the appellate court held, she "was not obligated to return the consideration because she did not seek to void the release. Rather, she sues for damages that resulted from [the hospital's] failure to honor the settlement." Id., 140 Ohio App.3d at 789, 749 N.E.2d 344.

**{¶ 65}** Other states have reached similar results. For example, *Siegel v. Williams* (Ind.App.2004), 818 N.E.2d 510, involved a legal-malpractice case

against the plaintiffs' former attorney, who had allegedly failed to file a notice of tort claim, which was a statutory prerequisite for maintaining the medical-malpractice claim. On the second day of trial, the case settled based on the defendant's representation that his wife had gotten all of his money in a divorce and that he would file for bankruptcy if the judgment were for more than he offered.

{¶ 66} Two years later, the defendant saw the plaintiffs' attorney and told him that he had "pulled one over on the [plaintiffs]" because he could have paid hundreds of thousands of dollars more.[4] The plaintiffs sued, alleging that defendant's fraud and misrepresentation had induced them to settle the legal-malpractice claim. The defendant argued that the complaint was actually a Trial Rule 60 motion (which is, in all relevant respects, identical to Ohio's Civ.R. 60(B)). The defendant lost, and the trial court reduced the award by the amount of the prior settlement. The appellate court affirmed the judgment, finding that in an action for fraud in the inducement, the party bringing the action has an election of remedies: " 'he may stand upon the contract and seek damages, or rescind the contract, return any benefits he may have received, and seek a return to the status quo ante.' " Id. at 514, quoting *A.G. Edwards & Sons, Inc. v. Hilligoss* (Ind.App.1991), 597 N.E.2d 1, 3. " ' "He can keep what he has received and file suit against the ones perpetrating the fraud and recover such amounts as will make the settlement an honest one." ' " Id., quoting *Farm Bur. Mut. Ins. Co. of Indiana v. Seal* (1962), 134 Ind.App. 269, 277, 179 N.E.2d 760, quoting *Auto. Underwriters v. Rich* (1944), 222 Ind. 384, 390, 53 N.E.2d 775. See also *Hanson v. Am. Natl. Bank & Trust Co.* (Ky.1993), 865 S.W.2d 302, 306 (holding that when a party is induced by a fraudulent misrepresentation to enter into a contract, that party must elect to either (1) affirm the contract and recover damages in tort

---

4. The attorney's license was subsequently suspended for intentionally deceiving a tribunal in another matter. *In re Siegel* (Ind.1999), 708 N.E.2d 869.

for the fraud or (2) disaffirm the contract and recover the consideration with which he has parted), overruled on other grounds by *Sand Hill Energy, Inc. v. Ford Motor Co.* (Ky.2002), 83 S.W.3d 483, 495; *Bryant v. Troutman* (Ky.App.1956), 287 S.W.2d 918, 920 (holding that if a "purchaser was induced to enter into the contract in reliance upon the false representations, he may maintain an action for re[s]cission, or he may accept the contract and sue for damages suffered on account of the fraud or deceit").

## III

**{¶ 67}** The majority is concerned that allowing the Berrys to sue for fraud while affirming the settlement would discourage settlements, endanger the finality of judgments, and encourage every party (whether a plaintiff or a defendant) who settles a dispute to subsequently make a claim that the settlement was unfair. Indeed, "[i]f there is one thing which the law favors above another, it is the prevention of litigation, by the compromise and settlement of controversies." *White v. Brocaw* (1863), 14 Ohio St. 339, 346, cited in *Shallenberger*, 167 Ohio St. at 505, 5 O.O.2d 173, 150 N.E.2d 295.

**{¶ 68}** In reality, allowing the separate fraud claim would maintain confidence in the rule of law and would promote settlements by encouraging full disclosure and discovery, thus minimizing postsettlement allegations of fraud. If the parties know that the court, at least after a year, would enforce a fraudulent settlement, it would discourage settlements, since the parties would never know of the honesty of the other party. If the only remedy for a fraudulent settlement is paying or receiving back the funds and starting over, there is actually an incentive, and no downside, for an unscrupulous party to engage in fraud and concealment.

**{¶ 69}** This is especially true since starting over in a complex case is made difficult by, among other things, the passage of time, fading memories, potential unavailability of experts or lay witnesses, and the additional expenses of

litigation, not to mention the financial and emotional strains on the parties. Holding that the only remedy for a fraudulently obtained settlement is a "do over" brought about by a successful Civ.R. 60(B) motion filed within one year discourages settlement and promotes game playing and obfuscation by the attorneys and parties.[5]

{¶ 70} Moreover, such concerns fall prey to the "slippery slope" argument, which, perhaps too cutely, has been compared to the argument that "'[w]e ought not make a sound decision today, for fear of having to draw a sound distinction tomorrow.' " Schotland, Caperton Capers: Comment on Four of the Articles (2010), 60 Syracuse L.Rev. 337, 340, fn. 18, quoting English legal historian Sir Frederick Maitland. It is certainly true that some claims fail because of timing (e.g., a wronged party does not follow up on a potential claim or an attorney does not engage in timely and thorough discovery); and there are safeguards in place (e.g., statutes of limitations and repose, heightened pleading and proof requirements, remedies for frivolous suits, res judicata, compulsory counterclaims) that further minimize such concerns. Each case must be decided on its own merits. This case is for fraud, not to set aside the previous settlement or judgment, and the Berrys should be entitled to litigate their claim. Therefore, I would affirm the judgment of the court of appeals and remand the cause to the trial court.

BROWN, C.J., concurs in the foregoing opinion.

_____

Morganstern, MacAdams & DeVito Co., L.P.A., Christopher M. DeVito, and Alexander J. Kipp; and Landskroner, Grieco, Madden, L.L.C., Paul Grieco, and Drew Legando, for appellees.

---

5. For examples of how minutely lawyers can parse "the whole truth and nothing but the truth," see Temkin, Misrepresentation by Omission in Settlement Negotiations: Should There be a Silent Safe Harbor (Fall/Winter 2004), 18 Georgetown J. of Legal Ethics 179, especially at 220-226, discussing nondisclosure of insurance in settlement negotiations.

Synenberg & Associates, L.L.C., Roger M. Synenberg, Dominic J. Coletta, and Clare C. Christie, for appellant.

_____